THE STATE, THE DOMESTIC TELEGRAPH AND TELEPHONE COMPANY ET AL., PROSECUTORS, v. THE MAYOR, &c., OF NEWARK ET AL.

1. Authority on the part of a municipality to grant to any person, natural or artificial, a right to erect telegraph or telephone poles, &c., in the public streets, can only be derived from the legislature by express grant or by necessary implication from powers expressly granted.
2. The charter of the city of Newark does not confer authority on the city to grant such a right in the public streets.
3. The consent of a municipality to the erection of such poles in the public streets, contemplated by the act of April 9th, 1875 (*Rev.*, *p.* 1174), and the supplement of March 11th, 1880 (*Pamph. L.*, *p.* 201), can only be given to corporations organized under those acts.

On *certiorari*.

By agreement of counsel, the following (among other) facts appear :

On the 16th day of April, A. D. 1886, a communication was presented to the mayor and common council of the city of Newark, at a meeting of the council held on that day, of which the following is a copy :

" *To the Honorable the Mayor and Common Council of the City of Newark, N. J. :*

" GENTLEMEN—The Citizens' Telephone Company, of Newark, N. J., respectfully petition your honorable body to grant to them the right to erect and maintain their poles and wires on the various streets, avenues and alleys of the city of Newark, subject, of course, to the charter and ordinances of the city, the poles and wires to be erected under the supervision of the street commissioner. The company agree, in consideration of this grant by the city, to furnish a telephone, with free toll to all connecting exchanges, to each of the public offices and departments of the city government, free of charge to the city, the public offices or departments where the same shall

be erected to be designated by resolution of the common council.

"Dated April 16th, 1886.

"E. A. WILKINSON, *President.*

"J. C. CLAYTON, *Secretary.*"

And at the same meeting the said council passed a resolution, of which the following is a copy :

"*Whereas,* The Citizens' Telephone Company, a corporation created under the laws of this state, and composed of our own citizens, has presented to council a petition requesting permission to erect poles and string wires through the city, to establish cheaper telephonic service for the citizens, therefore

"*Resolved,* That permission to so erect poles and string wires be given to said Citizens' Telephone Company, as requested, upon the conditions stated in said petition; provided, however, that no poles shall be erected on any street until the consent of the abutting property-owner shall be first obtained."

This resolution was approved by the mayor of the city on the 28th day of April, 1886.

The *certiorari* was allowed to bring up said resolution on the prosecution of the Domestic Telegraph and Telephone Company, of Newark, a corporation duly organized under the act of the legislature of this state, entitled "An act to incorporate and regulate telegraph companies," approved April 9th, 1875, and furnishing its subscribers in the city of Newark with telephonic intercommunication by means of poles and wires, erected by authority of said law, in the streets of said city, and of Jabez Fearey, Edward Weston and Marcus L. Ward, stockholders in said company, and owners of real estate located in various streets of said city.

Argued at November Term, 1886, before Justices REED, MAGIE and PARKER.

For the prosecutors, *Henry Young* and *Thos. N. McCarter.*

For the defendants, *J. Frank Fort.*

The opinion of the court was delivered by

MAGIE, J. Defendants' counsel first contended that prosecutors had no right to question the validity of the resolution brought before us by this *certiorari*. But the precise question thus raised was decided by this court in *Peoples' Gaslight Co.* v. *Jersey City*, 17 *Vroom* 297. Under the authority of that case it is plain that prosecutors may, by such a writ, challenge the authority of the city of Newark to adopt the resolution in question.

It becomes necessary, therefore, to determine whether the city of Newark had power to do what by this resolution it attempted to do, that is, to grant to the Citizens' Telephone Company permission to erect poles, &c., in the public streets.

The public easement in highways is vested in the public and can be divested by nothing short of an exercise of the sovereign power. Neither non-user nor adverse user will defeat the public rights. *Smith* v. *State*, 3 *Zab.* 712; *Price* v. *Plainfield*, 11 *Vroom* 608. The legislature, representing the public, may release the public right by vacating the highway, may modify the public use by granting a right to use the highway for a horse railroad, or may restrict the public use by granting a right to erect poles and other obstructions in the highway. What the legislature may thus do it may delegate authority to do. Thus, from the earliest history of the state, authority to vacate highways in country districts has been conferred on special tribunals. Like authority has frequently been conferred on municipalities. No reason appears why all such authority possessed by the legislature may not be thus delegated. But the delegation of such power must plainly appear, either by express grant or by necessary implication. *Morris and Essex R. R. Co.* v. *Newark*, 2 *Stockt.* 352, 363; *Jersey City Gas Co.* v. *Dwight*, 2 *Stew. Eq.* 242; *Montgomery* v. *Trenton*, 7 *Vroom* 79; *Paterson, &c., H. R. R. Co.* v. *Paterson*, 9 *C. E. Green* 158; *Glasby* v. *Morris*, 3 *C. E. Green* 72. The city of Newark derives its corporate existence from an act approved March 11th, 1857 (*Pamph. L.*, p. 116), but nothing in that act is capable of being construed as delegating

authority to the city to grant a right of obstructing the public streets to any person, natural or artificial, such as this resolution purports to grant.

The only parts of the charter to which we have been referred as justifying this claim of authority on the part of the city are subdivisions 7 and 8 of section 31.

The former, in substance, gives authority to regulate the streets and to prevent and remove obstructions therefrom. A similar clause in the charter of Trenton was held in this court not to authorize a grant of a right to lay a railroad in a public street, which would impede public travel. A like construction of this clause deprives the city of any claim of authority to pass this resolution.

Subdivision 8 gives authority to prevent or regulate the erection of any stoops, bay windows, areas, signs, or any post or erection, or any projection or otherwise, over or upon any street, &c. Reading the whole subdivision, I think it clear that the objects over which authority is designed to be given are only such as are appurtenant to the adjoining property, and used within the public street for its convenience. The power given relates to such modes of egress and ingress to adjoining property as are afforded by stoops, by cellar stairs, &c., and to such modes of use of business premises as are afforded by signs, awning-posts and the like. This appears from the last clause of the subdivision which gives power to remove these things at the expense of the owner or occupant of the premises. But, apart from this view, the principle of the case of *Montgomery* v. *Trenton, supra,* applied to this subdivision, requires us to hold that authority to prevent or regulate an obstruction will not include authority to license such obstruction not otherwise justified by law.

Neither of these clauses, therefore, support the city's claim of authority to pass this resolution. No other part of the charter seems to give the least countenance to the claim.

Nor can this resolution be sustained on the theory that it merely expresses the consent of this municipality, representing the inhabitants within it, to such an obstruction of its public

streets. Authority to thus consent must obviously have been conferred by the legislature. No such authority can be discovered in the charter.

Defendants cannot appeal to the provisions of the "Act to incorporate and regulate telegraph companies," approved April 9th, 1875 (*Rev., p.* 1174), because the Citizens' Telephone Company, the recipient of the grant made by this resolution, was not incorporated under that act, nor under the supplement to it, approved March 11th, 1880. *Pamph. L., p.* 201. The consent of the municipality provided for by those acts may only be given to corporations organized thereunder.

Nor can any support for this resolution be discovered in the General Corporation act (*Rev., p.* 174), under which the Citizens' Telephone Company claims to have been organized.

Whether such a company could organize and acquire a corporate existence under that act was much discussed on the argument. The passage of the above-mentioned act of 1875 and the supplement of 1880, providing for the organization of telegraph and telephone companies, in modes and under conditions quite inconsistent with those prescribed by the General Corporation act, seems to be a strong legislative declaration to the contrary. So, it was strongly urged that if the Citizens' Telephone Company acquired a corporate existence by its organization, it acquired thereby no right to make use of the public streets. If it has thereby acquired such right, the restrictions and limitations imposed on such companies by the acts of 1875 and 1880 may be evaded by the simple expedient of an organization under the General Corporation act.

But these questions are not necessarily involved in this case. The sole question is whether the city had power to pass this resolution, and nothing can be found in the General Corporation act supporting the claim of the city.

Other questions raised and argued by prosecutors need not be considered. For since we fail to find that any authority to pass this resolution has been conferred on the city, it must be set aside.