THOMAS H. BENTON ET AL. v. THE CITY OF ELIZABETH
AND THE NATIONAL TRANSIT COMPANY.

1. If the prosecutors of a *certiorari* do not, in their reasons filed, question
the *status* of a foreign corporation, it will be assumed, on final hearing,
that the corporation has complied with the statutory prerequisites to
the transaction of business by it in this state.

2. A corporation owning the fee of land can grant to another corporation
the right to use the land for a purpose which is not within the powers
of the grantor, but is within those of the grantee, and private persons
having no interest in the land cannot question the validity of such a
grant.

3. Where a corporation has acquired the private right to lay a pipe for the transportation of oil through land which is traversed by a public street in the city of Elizabeth, the city council may by ordinance prescribe the manner in which the pipe shall be laid and used and permit the corporation to dig the necessary trench across the street.

4. A pipe line for the transporation of oil is not rendered a nuisance by the mere fact that its presence enhances the rates of insurance on property in the neighborhood.

----

On *certiorari* to review an ordinance of the common council of the city of Elizabeth.

Argued at November Term, 1897, before Justices VAN SYCKEL, DIXON and COLLINS.

For the prosecutors, *John T. Dunn* and *Richard V. Lindabury*.

For the city of Elizabeth, *Addison C. Swift.*

For the National Transit Company, *Frank Bergen* and *Foster M. Voorhees.*

The opinion of the court was delivered by

DIXON, J. The ordinance attacked by this writ of *certiorari* purports to grant to the National Transit Company the privilege of opening and crossing certain streets in the city of Elizabeth, and of laying and maintaining a pipe therein for the transportation of oil, and to regulate the exercise of the privilege.

In considering the case we must assume that the National Transit Company has corporate power to acquire and exercise the right of laying pipes for the transportation of oil in this state, because the prosecutors have raised no question whatever with respect to its capacity in the premises. It is said that the company is a Pennsylvania corporation, but, under our statute (*Pamph. L.* 1896, *p.* 277, §§ 95, 97), corporations of sister or foreign states may, by certain proceed-

ings therein mentioned, obtain legal authority to acquire and hold real estate and transact their business in New Jersey. Hence it may easily be that this company possesses all requisite power, and if the prosecutors intended to challenge the power they should have declared that purpose in the reasons filed.

The evidence shows, sufficiently at least for present purposes, that the company has purchased such a right in the land mentioned in the ordinance as would entitle it to lay pipes therein for the transportation of oil, if the land were not subject to the easement of a public street. The Central Railroad Company, which owns the fee of the land, has granted that right to the transit company, and although the grantor could not lawfully use the land for such a purpose, yet that would arise only from defect of power in the railroad company, and not from any illegality in the appropriation of the land to such a use. Being possessed of the fee-simple, the railroad company could grant whatever rights in the land an individual owner of the fee could grant, provided the company did not impair its power to perform its public duties, and no such impairment is shown. But even if the validity of the grant were, in the abstract, questionable for want of corporate power in either party, yet the prosecutors, who are only private persons having no interest in the land, cannot dispute it. *Leazure* v. *Hillegas*, 7 *Serg. & R.* 313; *Fritts* v. *Palmer*, 132 *U. S.* 282; *De Camp* v. *Dobbins*, 4 *Stew. Eq.* 671, 691.

The point next to be considered relates to the power of the council to pass the ordinance. Its authority resides in the thirty-first section of the city charter (*Pamph. L.* 1863, *p.* 109), which enables the council to make and establish ordinances, rules, regulations and by-laws prescribing the manner in which corporations or persons shall exercise any privilege granted to them in the use of any street in said city, or in digging up said street for the purpose of laying down pipes, or any other purpose whatever, and regulating the keeping

and conveying of gunpowder, camphene, spirit-gas and other dangerous materials.

The authority thus delegated seems to us sufficient to sustain the present ordinance.

Against this view it is urged, first, that the enactment does not empower the council to grant privileges in the use of the streets, but only to regulate the exercise of privileges already possessed.

In a sense this is true, but in the sense in which it is pertinent to this case it is not true. A party invoking the action of the council must indeed have a right or privilege to be exercised in a street, but the right is imperfect until the council indicates in what manner it may be exercised. The pre-existing right is one to be exercised only as the council permits, and, within the meaning of this section, the council grants the privilege of exercising the right in the particular manner designated. So, in the present case, the transit company's right to use the land preceded the ordinance, but the enjoyment of that right depended upon the council's defining the mode in which the street might be temporarily interfered with and granting the privilege of such interference. The grant of such a privilege is just what this section of the city charter contemplates.

It is further urged that this power of the council relates only to the use of streets as streets, and not to the private use of the land within the street lines by the owners thereof. This construction, we think, would be too narrow. If the owner of land traversed by a street desired to lay a water-pipe or gas-pipe or telephone-wire across the street, beneath its surface, from his house to his stable, or if an abutting owner desired to build a vault or coal-chute under his sidewalk, we think this provision of the charter authorizes the council to grant him the privilege of doing so by prescribing the method in which it may be done. The object of the law is to enable the council to regulate the exercise both of private rights and of special franchises in the streets, in order

to secure, as far as practicable, the full enjoyment of the general public easement.

But it is insisted the laying of pipes in accordance with this ordinance is not within the private right of ownership of the land. Clearly, the private owner could so use the land if it were not subject to the public easement; and the existence of the highway does not deprive the owner of the right to use the land in any mode consistent with the public easement. *Allen* v. *City of Boston*, 159 *Mass.* 324; *Roebling* v. *Trenton Passenger Railway Co.*, 29 *Vroom* 666, 670. The use now contemplated will not interfere with the public easement. The tracks of the Long Branch division of the Central Railroad Company are laid upon the land across the streets mentioned in the ordinance, and the pipe of the transit company is to be placed parallel with and near to the tracks and at least two and a half feet below the surface of the ground. Manifestly in this position the pipe cannot at all obstruct the enjoyment of the public right. The temporary inconvenience caused by the digging of the trench is one of the things which the council has power to regulate and permit, and no fault can be found with the reasonableness of the ordinance in this particular.

The prosecutors further contend that the decisions in *Montgomery* v. *Trenton*, 7 *Vroom* 79; *Domestic Telegraph Co.* v. *Newark*, 20 *Id.* 344, and *Hutchinson* v. *Board of Health*, 12 *Stew. Eq.* 569, in this state, and other decisions to like effect elsewhere, are in conflict with the views we have expressed.

We do not so understand them. The basis of some of these decisions is merely that, under a proper construction of the statute, the legislature had not delegated to the municipality the power to sanction the substantial encroachment upon the public easement there attempted; and in others there was also the element that the thing attempted involved the use of the private property of one person for the private purposes of another. In none of them was it held that, under statutory authority like that before us, a municipality might

not permit an owner to use his land, which was subject to a public easement, in any lawful mode consistent with the enjoyment of the public right. The object and effect of the present ordinance do not go beyond such a permission. Should the location of the pipe become hereafter inconsistent with the public easement, this ordinance will not prevent its removal.

Finally, the prosecutors insist that the transportation of oil through a pipe thus laid in the populous portion of a city is, *per se*, a nuisance, and specially injurious to the persons living in the neighborhood, and hence cannot in any degree be favored by municipal action. On this point it is enough to say that the testimony does not sustain the allegation of fact. The existence of the pipe line may perhaps enhance the rates of insurance upon property in the vicinity, but that result would follow from the presence of various other businesses which would nevertheless be entirely legal. It does not constitute reason enough for the suppression of an occupation otherwise lawful. *Butler* v. *Rogers*, 1 *Stock.* 487; *Duncan* v. *Hayes*, 7 *C. E. Gr.* 25; *Courter* v. *Newark*, 25 *Vroom* 325; *Rhodes* v. *Dunbar*, 57 *Pa. St.* 274.

The ordinance is within the power delegated to the council, and must be affirmed, with costs.

VAN SYCKEL, J. (dissenting). The evidence shows that the laying of the proposed pipe line by the defendant company for the transit of crude petroleum through the city of Elizabeth will be injurious to the property of the prosecutors, and that gives them a standing in this court to contest the validity of the ordinance passed by the common council of Elizabeth, which gives to said company the privilege of opening certain streets in said city and laying its pipes across them. I do not question the authority of *Duncan* v. *Hayes*, 7 *C. E. Gr.* 25, and like cases cited on behalf of the defendants, but regard them as having no pertinency to this controversy. No rule is more firmly settled than that persons specially injured by the official action of a common council may challenge its legality.

The National Transit Company is a foreign corporation, without any authority from this state to lay its pipe line.

I find no authority in the common council to pass this ordinance, and cannot distinguish this case from the following cases in our own courts, in which the existence of such power was denied: *Montgomery* v. *Trenton,* 7 *Vroom* 79; *Domestic Telegraph Co.* v. *Newark,* 20 *Id.* 344; *Hutchinson* v. *Board of Health,* 12 *Stew. Eq.* 569.

In these cases our courts refused to recognize the right of the common council to grant the use of the street until authority was conferred upon it by the legislature to make such grant, although the consent of abutting landowners was obtained.

In the case of Montgomery *v.* Trenton the municipal ordinance granted to certain persons the right to lay a railroad track across West State street with the consent of abutting landowners, and in such a way as not to interfere with travel on the street.

This court said that the common council of the city of Trenton had no power over streets other than that conferred by the city charter, and that the ordinance must fall unless authority could be found for it in the Corporation act.

The provision of the charter of Trenton relied upon to support the ordinance is as follows:

"The common council shall have power to regulate, clean and keep in repair streets, &c., in said city, and to prescribe the manner in which corporations or persons shall exercise any privilege granted to them in the use of any street, avenue, highway or alley in said city, or in digging up any street, avenue, highway or alley for the purpose of laying down pipes or any other purpose whatever."

It will be observed that the language used in the city charter of Elizabeth upon this subject is precisely that of the charter of Trenton, and it must, therefore, receive the same interpretation.

This court, in construing this provision of the Trenton charter in the case above cited, said that if it applied to

privileges granted by legislative enactment it did not support the action of council, because there was no such legislative authority, and if it applied to privileges granted by common council, it must be interpreted to mean such privileges as might lawfully be granted. It was further declared, that in measuring the extent of the power of council, the object and purpose for which it was given must always be regarded as the test, and that only those things which are fairly within the idea of regulating streets, with a view to their use as streets, are competent subjects of corporate legislation.

The idea that the power to council to prescribe the manner in which corporations shall exercise any privilege granted to them in the use of streets related to grants made by property owners to corporations to use the public highways, found no countenance whatever in the view of the court. On the contrary, that interpretation was expressly excluded by restricting municipal action to those instances where grants were made under legislative sanction, and by refusing to accept the consent of abutting owners as a justification for the passage of the ordinance.

The right of common council to regulate the exercise of such privileges does not attach until the legislative authority for it is acquired. The company must be endowed with capacity to receive the right to occupy the street before council can consent to the use of the street by the company.

The argument of the defendant in this case is that the ordinance merely expresses the consent of the municipality to the use of the street so far as the public is concerned, and is therefore within its power. To the like contention made under the charter of Newark, in *Domestic Telegraph Co.* v. *Newark, supra,* the present Chief Justice replied as follows: "Nor can this resolution be sustained on the theory that it merely expresses the consent of this municipality, representing the inhabitants within it, to such an obstruction of its public streets. Authority to thus consent must obviously have been conferred by the legislature. No such authority can be discovered in the charter."

Following the previous declarations of the court in the Trenton case, the Newark ordinance was denounced as illegal and incapable of being validated by the consent of abutting owners. The rule established by these cases is that the privilege granted must have its basis in legislation to authorize council to consent, and it must be alike applicable, whether the proposed structure is upon the surface of the street or involves a digging up of the street to lay pipes under the surface.

We are dealing in this case only with the public right in the highways, and with the power of the common council to grant to private corporations the use of the highway so far as it is within public control.

The cases before referred to, which are in accord with many decisions in other states, circumscribe the legitimate action of the common council, in relation to the public right in the highways, to the exercise of such authority as is clearly conferred by the legislature. No such authority appears in this case.

But if the consent of the abutting owners constituted a grant within the meaning of the city charter, "The Central Railroad Company" is without authority to lay a pipe line through the city over its right of way for the purpose of transporting petroleum across the state, and cannot bestow such a right upon the foreign corporation.

The right of common council to permit an abutting owner of land to use the street to lay a pipe for the convenience of his land, as a right appurtenant thereto, does not imply the right to permit this foreign corporation to occupy the street for the purpose of its pipe line.

It may be true that these prosecutors could not intervene to prevent the conveyance by "The Central Railroad Company" to the "National Transit Company," or to set aside such conveyance, but when the grantee sets it up in defence of an act which is specially injurious to the prosecutors, it is competent for them to deny that any legal support to the ordinance can be derived from such grant. If it is *ultra vires*

it gives no support to the action of the common council. A grant to support the ordinance must be derived from one who has a right to make it. In my judgment the ordinance is illegal and should be set aside. For the reasons herein stated I cannot concur in the opinion of the majority of the court.