JOSEPH A. BEECHER, HENRY E. SMITH, HERMAN KREIT-
LER AND WILLIAM H. BENNETT v. THE BOARD OF
STREET AND WATER COMMISSIONERS OF THE CITY
OF NEWARK, THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA ET AL.

Submitted March 21, 1900—Decided April 20, 1900.

On March 1st, 1900, the board of street and water commissioners of the
city of Newark passed an ordinance to grant permission to the Pruden-
tial Insurance Company to construct and maintain a bridge across
Bank street in said city, several feet above the surface of the street, as
a passageway between two buildings owned by the company on oppo-
site sides of the street. *Held*—
1. That the board had not lawful power to grant such permission.
2. That owners of property fronting on Bank street in the blocks adja-
cent to those on which the company's buildings stood, were entitled to
prosecute a *certiorari* to set aside the ordinance, it being shown by the
evidence in the cause that the property of the prosecutors would be
injuriously affected by the bridge.

On *certiorari* to review an ordinance of the street and water
board of the city of Newark.

Before Justices DIXON, LUDLOW and COLLINS.

For the prosecutors, *Joseph A. Beecher.*

For the defendants, *Joseph Coult* and *William H. Corbin.*

The opinion of the court was delivered by

DIXON, J. The *certiorari* in this case brings under review
an ordinance of the street and water board of the city of
Newark, passed March 1st, 1900, purporting to grant per-
mission to the Prudential Insurance Company to erect and
maintain a bridge across Bank street, about two hundred and
twenty-one feet west of Broad street, and about one hundred
and eight feet east of Halsey street, as a passageway between

two buildings owned by the company on the opposite sides of Bank street. The *certiorari* was sued out by persons owning real estate on the westerly corner of Bank and Halsey streets, and on Bank street, west of Halsey street.

The reasons filed for setting aside the ordinance, all, with one exception, assign the lack of power in the board to authorize such an encumbrance of the public street, and a preliminary question therefore arises whether these prosecutors can prevail on reasons of that nature.

The latest judgments on this subject, delivered by the court of last resort, are to be found in *Tallon* v. *Hoboken*, 31 *Vroom* 212, and *Oliver* v. *Jersey City*, 34 *Id.* 634. In the Tallon case an ordinance beyond the power of the municipality, and which attempted to sanction a special occupation of a street, was assailed by a prosecutor who had a right in the street different from the right of the public, and therefore would suffer a special injury beyond that sustained by the public, and also by prosecutors who had no such right and would suffer no such injury. The court adjudged that only the prosecutor suffering the special injury could maintain a *certiorari* to question the ordinance. In the Oliver case, where also a special occupation of a street was the matter complained of, the prosecutor was said to have no interest differing in character from that of other citizens using the highway, but the ordinance was attacked on the ground that it had not been adopted in accordance with the municipal law, and the court concluded that the prosecutor had a legal standing for the maintenance of the writ.

Mr. Justice Van Syckel, delivering the opinion of the Supreme Court in the Oliver case, which on this point was approved by the Court of Errors, declared the basis of these adjudications to be, that when the ordinance is beyond the power of the municipality, so that it would afford no legal protection to the acts done under it, even against a collateral attack, then the prosecutor must show a private interest different in kind from that of the public; but when the illegality of the ordinance consists only in the mode of its

adoption, then a private prosecutor without such an interest may maintain a *certiorari* in defence of the public rights.

The test to be applied in determining whether that private interest exists or that special injury may be suffered, which is necessary to entitle a private prosecutor to question by *certiorari* the power of a municipality, has not hitherto been clearly defined. But light is thrown upon it by the very recent decision of this court in *Morris and Cummings Dredging Co.* v. *Jersey City* (*ante p.* 142), where resolutions of a municipal board, providing for certain alterations in Chapel avenue, west of the Morris canal, were set aside as being *ultra vires*, at the instance of the prosecutor owning land on the avenue east of the canal. This decision appears to have been concurred in by Mr. Justice Van Syckel, whose statement of the doctrine was approved in the Oliver case, and by Mr. Justice Gummere, who delivered the final opinion in the Tallon case. It may, therefore, be deemed consistent with the rule laid down by the Court of Errors.

This decision indicates that the necessary private interest or special injury may be found, even though the acts to be done under the invalid ordinance will not invade the property of the prosecutor or change the street in front of his property. On this footing, the question whether the requisite interest or injury appears when alteration of a highway is intended, seems to be one of fact, to be answered on consideration of all the circumstances of each case, as commissioners or a jury, selected to award damages for the carrying out of the municipal plan, might answer it. But as such damages are usually allowed by our statutes only to persons part of whose property is taken, the question in each case affecting a public street may become more definite and intelligible, if, without changing its substance, it be cast in more familiar form; thus: If the condition of Bank street, contemplated by the municipal proceedings, already existed and the public authorities should determine to alter the street to its present state, thereby incurring public expense, would the property of the prosecutors be assessable for special benefit derived from such alteration?

Evidently, if the abatement of the proposed change when effected would confer a special benefit on the property of the prosecutors, the execution of the proposed plan would cause a special injury to them.

We are therefore brought to the question of fact, whether the evidence in this case shows that the property of the prosecutors will be injuriously affected by the proposed structure.

The bridge is to be erected on the block between that property and Broad street, which is the main business thoroughfare of the city. Its abutments will occupy two feet of each sidewalk of Bank street, and the structure will rise from the height of twelve feet to the height of forty-five feet above the surface of the street, and will cover about twenty-eight feet of the street longitudinally. Thus it will narrow Bank street at the abutments about four feet, will obstruct the view between the prosecutors' property and Broad street by interposing a wall over thirty feet in height, and will transform an open street between that property and the main avenue of the city into a tunnel for twenty-eight feet of the distance.

It is common practice for commissioners to assess property on adjacent blocks for special benefit resulting from the widening of a street leading from that property to the business center of the town, and although in this case the narrowing of the street is slight, yet it is appreciable, and so would afford a legal basis for a conclusion that it would work an appreciable injury to the land on adjacent blocks. Several witnesses, expert on matters likely to affect the value of real estate in the neighborhood, testify that in their judgment the construction of the bridge will impair the market value of the prosecutors' property, giving as their reasons the preference of pedestrians for a way open overhead and the fact that business signs on the property will be rendered less noticeable to the throngs of people on Broad street, and so the property will become less available for business purposes.

Looking at all the evidence in the case, we think it preponderates in favor of the proposition that the erection of this bridge would injuriously affect the property of the prose-

cutors, and therefore that they have the private interest or are exposed to the special injury which entitles them to question by *certiorari* the power of the board in the matter under review.

On examining the sources whence the board derives its authority, we have not been able to find the requisite power. The legislative grant which seems to approach most nearly to the exigency of the situation, is contained in subdivision 8, of section 31 of the city charter (*Pamph. L.* 1857, *p.* 116), as follows : " To prevent or regulate the erection or construction of any stoop, step, platform, bay window, cellar door, area, descent into a cellar or basement, sign, or any post or erection, or any projection or otherwise, in, over or upon any street or avenue."

The words " erection, or any projection or otherwise, in, over or upon any street," are in themselves very comprehensive, and if they stood alone might be deemed to embrace even the bridge now proposed. But they do not stand alone, and therefore their meaning must be ascertained in view of their context, and under the rule usually applied in the interpretation of general terms following particulars, *noscitur a sociis.* Thus regarded they should be confined to such erections or projections as do not interfere with the street in any material respect differing from the interference caused by the particulars mentioned, such erections or projections as might be permitted to all abutting owners without serious impairment of common or private rights. But there is no reasonable resemblance between any of the particulars designated in this statute and the bridge now contemplated, and if similar bridges were generally constructed between buildings on opposite sides of a street, the character of the streets would be radically changed.

In the elevated railroad cases (*Story* v. *New York Elevated Railroad Co.,* 90 *N. Y.* 122 ; *Lahr* v. *Metropolitan Elevated Railroad Co.,* 104 *Id.* 268), the New York Court of Appeals decided that the construction of such railroads in public streets was inconsistent with the trust under which the city

of New York held the streets, whether the city owned the fee-simple or only an easement in the land underlying the street. So, bridges thrown across a street above its surface, for private use, should be deemed inconsistent with the purposes for which the city of Newark has control of highways, and only so far as power may be exercised in reasonable accordance with those purposes is the city clothed with authority over streets and avenues.

. Our conclusion therefore is that the board of street and water commissioners had no lawful power to pass the ordinance under review, and consequently it is set aside, with costs.