57 N.J. Super. 80 (1959)
153 A.2d 847
GABRIEL KIRZENBAUM, LAWRENCE J. MEYERS AND WILLIAM MARMORSTEIN, PLAINTIFFS-APPELLANTS,
v.
CHESTER W. PAULUS, MAYOR OF THE CITY OF NEW BRUNSWICK, HERBERT J. DAILEY, LUKE J. HORVATH, FELIX N. CANTORE AND JAMES A. McGARRY, BEING THE BOARD OF COMMISSIONERS OF THE CITY OF NEW BRUNSWICK, N.J., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 25, 1959.
Decided August 12, 1959.
*83 Before Judges GOLDMANN, CONFORD and HANEMAN.
Mr. Gabriel Kirzenbaum argued the cause as attorney pro se and for plaintiffs-appellants (Mr. Perry J. Martin on the brief).
Mr. Frederick F. Richardson argued the cause for defendants-respondents.
The opinion of the court was delivered by CONFORD, J.A.D.
Judge Vogel, sitting in the Superior Court, Law Division, held that the City of New Brunswick had acted within the purview of valid and appropriate legislative authorization in granting permission by resolution to the National Bank of New Jersey to install and use for its business purposes a curb depository for motorist-customers on the sidewalk on Church Street, alongside its bank building. From that determination the plaintiffs, citizens and taxpayers of the municipality, prosecute this appeal.
The opinion of the trial judge succinctly states the factual background of the controversy, Kirzenbaum v. Paulus, 51 N.J. Super. 186, 189-194 (Law Div. 1958), and is to that extent adopted for purposes of the present opinion. We need only add that the final (amendatory) resolution of the City *84 Commission, adopted May 6, 1958, expressly finds and determines that the granting of the application for the curb depository (referred to therein as a "sidewalk teller") "is necessary and desirable in the interest of the public welfare, public safety and for the improvement of traffic conditions and the flow and movement of traffic, and in the City of New Brunswick, N.J." The resolution thus comports, on its face, with the criteria fixed in the ordinance.
Neither the argument portion of the plaintiffs' brief nor the "Statement of Questions Involved" therein impugns the good faith of the city officials in the adoption of the resolution, and plaintiffs are therefore not entitled to make that point, as they undertook to do at the argument. R.R. 1:7-1(c). In any case, the proofs taken before the trial court satisfy us that there was sufficient relationship between the objective of traffic amelioration and the use of the depository to preclude any condemnation of the resolution as not founded on the standards set forth in the ordinance. If there was legal power to adopt the ordinance and resolution, the motives of the members of the governing body in doing so, absent fraud, personal interest or corruption, are immaterial. American Grocery Co. v. Bd. of Com'rs. of City of New Brunswick, 124 N.J.L. 293, 297 (Sup. Ct. 1940), affirmed 126 N.J.L. 367 (E. & A. 1941). No such elements are even suggested here.
We proceed to the points developed in plaintiffs' brief.

I.
It is urged that there is no statutory authorization for the municipal action here challenged. Defendants aver that direct sanction is to be found in N.J.S.A. 40:67-1, subd. d, dealing with municipal legislation concerning projections and encroachments in, over and upon streets and highways; and that alternative or correlative empowerment arises from R.S. 40:48-2, authorizing municipal legislation to subserve good government, order and the preservation of the public *85 health, safety and welfare. As we find the instant ordinance and the administrative application of it here complained of amply grounded in the statute first mentioned, we pass the question as to the pertinence of the other.
N.J.S.A. 40:67-1 derives from article XXII, "Streets and Public Places," of L. 1917, c. 152, commonly known as the Home Rule Act. That statute was a broad attempt to codify and enact general legislation pertaining to municipal corporations. Section 1 of article XXII thereof, authorizing municipal regulatory legislation, inter alia, over a wide variety of subjects pertaining to the use and abuse of streets and public places, is substantially reconstituted in N.J.S.A. 40:67-1. Insofar as the question before the court is concerned, the following is the portion thereof requiring construction:
"The governing body of every municipality may make, amend, repeal and enforce ordinances to:

* * * * * * * *
d. Prevent or regulate the erection and construction of any stoop, step, platform, window, cellar door, area, descent into a cellar or basement, bridge, sign, or any post, erection or projection in, over or upon any street or highway, and for the removal of the same at the expense of the owner or occupant of the premises where already erected; * * *."
Substantially the same language (as well as that of other of the subparagraphs of N.J.S.A. 40:67-1) was to be found in various municipal charters dating back as far as the middle of the 19th Century. See, e.g., Beecher v. Board of Street & Water Com'rs of City of Newark, 64 N.J.L. 475, 479 (Sup. Ct. 1900), affirmed 65 N.J.L. 307 (E. & A. 1900) (Newark: 1857); Ivins v. Inhabitants of City of Trenton, 68 N.J.L. 501, 504 (Sup. Ct. 1902), affirmed 69 N.J.L. 451 (E. & A. 1903) (Trenton: 1874).
In Domestic Telegraph & Telephone Co. v. Newark, 49 N.J.L. 344, 347 (Sup. Ct. 1887), the Newark charter provision mentioned was held confined in its scope of authorization to such objects "as are appurtenant to the adjoining *86 property, and used within the public street for its convenience," and therefore not to constitute a basis for municipal permission to erect on public streets the wires and poles of a telephone company. The statutory provision must be appraised for intent in the light of the apparently long-established public custom of permitting abutting property owners to make the kinds of encroaching uses of sidewalks and streets mentioned in subparagraph d of the statutory section cited, as evidenced by the comments in such cases as Weller v. McCormick, 47 N.J.L. 397, 400 (Sup. Ct. 1885) (referring to "the peculiar privilege usually accorded to the owner of the land * * *"); Halsey v. Rapid Transit Street Ry. Co., 47 N.J. Eq. 380, 388 (Ch. 1890); Scheinman v. Bloch, 97 N.J.L. 404, 406 (Sup. Ct. 1922), affirmed 98 N.J.L. 571 (E. & A. 1923). Independently of the question of the extent of municipal power to authorize sidewalk obstructions under appropriate legislative delegation, however, the courts have been sensitive to the need for protection of nearby property owners especially injured as a result of a municipally sanctioned street obstruction, whether or not allowed at the instance of the immediate abutter. See Beecher v. Board of Street & Water Com'rs. of City of Newark, supra; Pennsylvania R.R. Co. v. Angel, 41 N.J. Eq. 316 (E. & A. 1886); McDonald v. Newark, 42 N.J. Eq. 136 (Ch. 1886); Traphagen v. City of Jersey City, 52 N.J.L. 65 (Sup. Ct. 1889); Union Towel Supply Co. v. Jersey City, 99 N.J.L. 52 (Sup. Ct. 1924); George W. Armbruster, Jr., Inc. v. City of Wildwood, 41 F.2d 823 (D.C.N.J. 1930); State v. Londrigan, 4 N.J. Misc. 574 (Sup. Ct. 1926); Faulks v. Borough of Allenhurst, 115 N.J.L. 456 (E. & A. 1935).
None of the plaintiffs in the case at hand complains of an impairment of his property rights by the maintenance of the structure here involved. The issues, therefore, are confined to the scope of legislative delegation of power to the municipality and constitutional requirements relevant thereto.

*87 II.
Plaintiffs argue that the statute cited above does not contemplate municipal ordinances affirmatively authorizing the creation of particular kinds of street or sidewalk obstruction. However, it is well settled that the inclusion of the term "regulate," in a statute concerning this type of subject matter, operates to sanction municipal authorization of the things to be regulated. 64 C.J.S. Municipal Corporations § 1708, p. 109; Hoey v. Gilroy, 129 N.Y. 132, 29 N.E. 85 (Ct. App. 1891). None of the New Jersey cases cited by plaintiffs is to the contrary. The implications of all of them are in accord with the proposition stated. This is also true of Beecher v. Board of Street & Water Com'rs. of City of Newark, supra, which plainly assumed that the municipality was authorized by the statute to permit the maintenance or erection of any structure properly held to come within the legislative designation. The dispute was only as to the scope of the latter. See III, infra. The point argued is patently devoid of merit.

III.
Plaintiffs further argue that where a sidewalk obstruction, like that here involved, is for the use and convenience of a private business concern, it should not be deemed intended to be included for municipal authorization by a statute such as N.J.S.A. 40:67-1, subd. d, which does not mention it expressly. However, the private character of those kinds of obstructions expressly referred to in the statute (stoops, windows, cellar doors, signs, etc.), is obvious. There is therefore no rational basis for construction of the statute on the differentiation of the private or public character of the user of the structure. In the case of abutting owners, as distinguished from others, there has never been any doubt expressed in the cases as to the validity of or justification for legislative delegation to the municipalities of the right to authorize obstructions of sidewalks by abutting landowners, *88 on a revocable basis, provided they neither substantially impaired the primary right of the general public to passage thereover nor adversely affected the property interests of other landowners. See Benton v. City of Elizabeth, 61 N.J.L. 411, 415 (Sup. Ct. 1898), affirmed 61 N.J.L. 693 (E. & A. 1898); Scheinman v. Bloch, supra. These principles have widespread recognition generally. 64 C.J.S. Municipal Corporations § 1707, p. 108; 10 McQuillin, Municipal Corporations (3rd ed. 1950), § 30.48, pp. 639-40; § 30.73, pp. 700, 706-7, 708; § 30.74, pp. 709-10.
In the present case, as indicated, there is no claim of injury to the property interests of plaintiffs or others. Nor do the proofs warrant the conclusion that the right of sidewalk passers-by to substantially unimpeded traversal of the walk has been impaired.
The question remains as to whether the subject matter before us falls beyond the purview of N.J.S.A. 40:67-1, subd. d, either because not expressly mentioned in the statute or because not physically appurtenant to a building or structure of the abutting owner. The inquiry requires consideration of Beecher v. Board of Street & Water Com'rs. of City of Newark, supra (64 N.J.L. 475). In that case an affected property owner challenged a Newark ordinance granting permission to Prudential Insurance Company to erect and maintain a bridge structure across Bank Street as a passageway connecting buildings it owned on both sides of the street. Municipal power was argued to inhere within a charter provision very similar in verbiage to the present statute, the most conspicuous difference being the absence of "bridge" from the list of specific kinds of obstructions and erections set forth in the charter provision. The court held that the words, "erection, or any projection or otherwise, in, over or upon any street or avenue," must, under the principle of noscitur a sociis, take their meaning from the specific particulars mentioned, and were therefore to be "confined to such erections or projections as do not interfere with the street in any material respect differing from the interference *89 caused by the particulars mentioned," i.e., "such erections and projections as might be permitted to all abutting owners without serious impairment of common or private rights" (id., at page 479). A bridge of the kind there involved was held not within the legislative contemplation, thus ascertained.
Whatever may be thought of the intrinsic merits of the application by the court of the indicated rule of statutory construction in the Beecher case, the addition of the term "bridge" to the list of structures specified by the charter provision when it became part of the Home Rule Act (and thereafter as incorporated into the Revised Statutes) materially diminishes the present authority of the cited decision insofar as it may be argued to preclude the municipal authorization of structures located further out into the sidewalk area than the common run of stoops, platforms, cellar doors, signs, etc. Moreover, in passing on the matter before us, we are moved to weigh the combined effect of present-day practical problems in the management of traffic in downtown municipal areas and the mandate for liberality in construction of municipal powers ordained by the Constitution of 1947, Article IV, Section VII, paragraph 11. (See Fred v. Mayor and Council, Old Tappan Borough, 10 N.J. 515 (1952).) In that light, there is much to commend judicial acquiescence in the construction of the statute and its administrative implementation by the New Brunswick authorities in the case before us. The depository is, literally, an "erection * * * in" a street, and may be contrasted with a "projection * * * over" a street. The statutory language, particularly if read liberally in compliance with the constitutional enjoinder, thus suggests an intent to cover both structures encroaching by projection from the lot lines onto the street (including the sidewalk) and erections constructed entirely beyond the lot line, but within the sidewalk area, such as that here involved.
As urban traffic development becomes steadily more complex, the need is for more, rather than less, flexibility in the range of permissible discretion and judgment by which *90 municipal administrators may attempt to accommodate the various and sometimes competing requirements and demands of local businessmen and their customers for the use of streets as parking and "standing" places for motor vehicles, within the right of reasonably free and unimpeded passage over both streets and sidewalks by the general public. The evidence summarized in Judge Vogel's opinion shows the tangible benefits in terms of relief of traffic congestion in and about the vicinity of Church and George Streets which has attended the use of the depository (51 N.J. Super., at pages 193, 194). While arguments against the claimed beneficial effects of the depository can be readily marshalled, we cannot say that the policy decision in the matter by the governing body of the municipality is arbitrary or capricious or that the finding of fact by the trial judge as to improvement of traffic conditions is without support in the evidence. Violence is visited neither upon the language nor the spirit of the statute in construing it as comprehending municipal authorization of the bank depository under the attending circumstances, and we consequently hold the structure here authorized by the defendants to be within the permissive scope of N.J.S.A. 40:67-1, subd. d. Cf. Adams v. Merchants & Planters Bank & Trust Company, 226 Ark. 88, 288 S.W.2d 35 (Sup. Ct. 1956) (involving bank curb-teller occupying seven feet of sidewalk, and allowing only five feet for pedestrians held abatable at suit of neighboring owner of commercial property lowered in value by proximity of structure); Schroder v. City of Lincoln, 155 Neb. 599, 52 N.W.2d 808 (Sup. Ct. 1952) (bank curb-teller held an illegal encroachment on public street, there being no authorizing legislation, but action dismissed because plaintiff not specially or adversely affected).

IV.
The ordinance is attacked as invalid because of lack of proper standards and norms for the issuance of permission *91 for a sidewalk structure. The question must be tested by the nature of the governmental problem involved. Insofar as the statute and ordinance concern private structures on public streets and sidewalks, the governmental subject matter is akin to that of zoning. Fairly broad and generally expressed standards suffice in that field. Ward v. Scott, 11 N.J. 117 (1952). The criteria for administrative authorization in the ordinance before us are not less specific than those held adequate in that case. This is particularly true with respect to the norm actually applied here, i.e., where "necessary or desirable * * * for the improvement of traffic conditions and the flow and movement of traffic." Cf. R.S. 40:55-32 ("to lessen congestion in the streets * * * promote health, morals or the general welfare"). The ordinance is not deficient in respect of standards.

V.
The ordinance and municipal action are challenged as a "donation of land" for private uses, in violation of the Constitution, Article VIII, Section III, paragraph 3. However, the title to the land on which the depository stands is not in the municipality, but, presumably, in the banking corporation as abutting owner, subject only to the easement of public travel. Valentine v. Lamont, 13 N.J. 569, 577 (1953). Moreover, the resolution is subject to rescission if ever the governing body regards the structure as undesirable. Thus the challenged action cannot be regarded as, in any sense, a "donation of land" by the city to the banking corporation. The original adoption in 1875 of the constitutional provision in question as an amendment to the 1844 Constitution had entirely different evils in mind. See Carr v. Borough of Merchantville, 102 N.J.L. 553, 556, 557 (Sup. Ct. 1926); Wilentz v. Hendrickson, 133 N.J. Eq. 447 (Ch. 1943), affirmed 135 N.J. Eq. 244 (E. & A. 1944).
As late as 1898 it was judicially recognized that the private owner of land subject to a public easement for street *92 purposes might lawfully be permitted by the municipality to use it "in any mode consistent with the public easement," Benton v. City of Elizabeth, supra (61 N.J.L. 411, at pages 415, 416, affirmed 61 N.J.L. 693 on the opinion below in respect to the subject under discussion). In the light of such authority, the retention of the constitutional provision unchanged in the Constitution of 1947 is evidence that the practice referred to is not offensive to the Constitution.
We find no constitutional infirmity in the action of the municipality.
Judgment affirmed; no costs.