69 N.J. Super. 327 (1961)
174 A.2d 271
LOUIS M. CSAKI, GERALDINE CSAKI, MARGARET CSAKI, KARLEY INVESTMENT COMPANY, A CORPORATION, AND MARS REALTY COMPANY, A CORPORATION, PLAINTIFFS,
v.
TOWNSHIP OF WOODBRIDGE, A MUNICIPAL CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided October 6, 1961.
*330 Mr. William S. Gurkin, attorney for the plaintiffs.
Mr. Stewart M. Hutt, attorney for the defendant.
SCHWARTZ, J.C.C. (temporarily assigned).
Plaintiffs are the owners of 212 lots, located southwest of Elm Street in Woodbridge Township, as shown on Map of Highland Road and South Cliff Road, Sanitary Sewer System (Exhibit P-1). Only one house is erected thereon and is serviced *331 by a septic tank. The defendant municipality adopted an ordinance on September 27, 1960 authorizing and appropriating funds for sanitary sewers. The ordinance authorizes services for the Highland Road area and the Victory Acres area of the Township. Sewering of plaintiffs' lands covers somewhat less than one-half of the total linear feet of sewer in the Highland Road area. The Victory Acres area is probably twice as extensive since the appropriation for the same is over twice that of the Highland Road area. Plaintiff produced no evidence of the situation on the Victory Acres area.
The improvement authorized by N.J.S.A. 40:56-1 as a local improvement contemplates assessment against lands to the extent benefited. Since the municipality had reached its debt limit the State Board of Health, finding that the "expenditure and every part thereof, is necessary to protect the public health and to prevent or suppress a present menace to the public health * * * and that no less expensive method of preventing or suppressing such menace exists," issued an order July 26, 1960 (N.J.S.A. 40:1-16(g)) permitting the municipal action.
Plaintiffs' complaint in lieu of prerogative writs seeks to repeal or modify the ordinance, to eliminate their lands from the project; a restraint against defendant's accepting bids, awarding a contract and assessing their lands, and judgment declaring the ordinance and proposed assessment unconstitutional.
It is contended that plaintiffs' lands are free of unsanitary conditions and no present menace exists requiring said lands to be sewered, and consequently the State Board of Health action was improvident and lacked factual basis so far as their lands are concerned.
Plaintiffs additionally maintain that they do not need the improvement, since they have no present intentions of building and sewers could be installed when and if needed in the future; and an engineer testified on their behalf that it would be sound engineering practice to bring the sewer up *332 to plaintiffs' lands and stop there. The municipal engineer, on the other hand, said it would be sound engineering practice to include plaintiffs' lands at this time to avoid piecemeal operation with consequent obvious municipal burdens. It is agreed that plaintiff received no notice and did not appear at the State Board of Health hearing. (No notice is provided under the statute.) Public notice of the ordinance is conceded, however, by publication, and proper procedural enactment and authority to take the municipal action is undenied.
There is no dispute that plaintiffs' lands are free of unsanitary conditions. In addition there is no contradiction or dispute that said lands are undeveloped (with exception of the one house above mentioned), overgrown with shrubs and trees, and no streets are laid out. Plaintiffs are builders and developers, have built 35 homes or so in the last six years, and built others prior thereto. Plaintiffs Michael Csaki and his son, as builders, have had dealings with the borough for years and both testified the township officials had been giving them a "hard time" for a long time, with undue delays in building permits and the like. Their testimony sought to establish ill will against them in support of such allegation in the complaint. (It appears however that the mayor and present committeemen, recently elected, represent a change in political administration.) Additionally, they stated that on September 27, 1960, the night of the meeting at which the ordinance was adopted on final reading, they objected to inclusion of their lands in the ordinance and the mayor assured them "it would be deleted" when informed it was vacant land. However, they also said the mayor told them he would look into it. They testified they felt assured and left, and first learned the ordinance was adopted, with their lands included, when, in May 1961, they noticed publication for bids. The mayor and engineer dispute any promise "to delete." The mayor testified that on September 20, and not 27, the Csakis appeared at a meeting and complained. He said he would direct the engineer to *333 look into the matter and report. This was done and the engineer reported unfavorably as to the elimination. The municipal engineer corroborated the mayor's version and further testified there were problems with developers seeking to install sanitary sewers in piecemeal fashion; that septic tanks are not successful due to high clay content of the soil; other sewer projects are proceeding simultaneously for over-all sewer service for the municipality; that he inherited these sewer plans from the engineer who was his predecessor; that it was a "bad septic area" and that there was "raw sewage in the streets," and there were recurrent requests by many residents for the sewer, the unsanitary conditions being a matter of general knowledge.
The plaintiffs' engineer stated "all the terrain is practically the same" and conceded he has designed sewer plans for municipalities where there was no immediate prospect of building houses.
The mayor stated no ill will or malice prevailed against plaintiffs and that all builders were treated alike.
The map of the area, the ordinance and the minutes of the September 27 meeting were marked in evidence as Exhibits P-1 and P-2 and D-1, respectively.
The minutes disclose no appearance or complaint by Csakis at the meeting on September 27 (indicating the mayor and municipal engineer were probably correct, that they appeared on September 20). This was vigorously denied with much examination and cross-examination directed at it. Credibility seemed to be the objective. It is significant that the complaint as filed alleged September 20 as the date.
I find that plaintiffs have not established that the municipal action was motivated by ill will of local officials against them. In any event, if there was legal power to adopt the ordinance, the motives of the members of the governing body are immaterial. Kerzenbaum v. Paulus, 57 N.J. Super. 80, at p. 84 (App. Div. 1959).
I further find that the mayor did not assure plaintiffs orally that their lands would be deleted from the ordinance. *334 Plaintiffs themselves gave inconsistent versions of the so-called promise "to delete." It is settled that a city cannot be bound by any such representation. Schacht v. City of Passaic, 11 N.J. Misc. 770 (Sup. Ct. 1933), in the absence of fraud, personal interest or corruption.
The legal issues are:
1. Are the plaintiffs barred by R.R. 4:88-15(b)(2) as being premature?
2. Are the plaintiffs barred as being out-of-time under R.R. 4:88-15(b) (4)?
3. Was the action of the municipality capricious, arbitrary and unreasonable and an abuse of discretion and hence unconstitutional?
4. Was the action of the State Board of Health without legal force or effect so as to render the ordinance invalid? N.J.S.A. 40:1-16(g).
5. Was the ordinance a proper exercise of municipal authority pursuant to N.J.S.A. 40:56-1 et seq.?
(1) R.R. 4:88-15(b) (2) provides that no proceedings for review, hearing and relief in lieu of prerogative writs shall be commenced "to review an assessment or award made for any municipal improvement after 30 days from the date of the confirmation of such assessment or award."
Since there is no assessment yet, is the rule applicable? That such proceeding is not premature was the holding in the Rutan Estates v. Belleville, 56 N.J. Super. 330, at p. 339 (App. Div. 1959).
(2) R.R. 4:88-15(b)(4) provides that no proceedings for review hearing and relief in lieu of prerogative writs shall be commenced "to review an ordinance * * * for a public improvement * * * after 30 days from the date of the passage or adoption of such ordinance * * *." This rule has exceptions. Where important constitutional questions are involved an exception exists. McKenna v. N.J. Highway Authority, 19 N.J. 270 (1955); Holloway v. Pennsauken Twp., 12 N.J. 371 (1953); Rutan v. Belleville, supra; Schacht v. Tremble, 28 N.J. 40 (1958).
*335 If the landowner is deprived of a fundamental constitutional right, statutory time limitations do not apply. Holloway v. Pennsauken, supra. It follows that the court must determine whether such constitutional question is involved. If decided in the negative, no other exception being advanced, the rule would be decisive.
(3) (4) & (5) We proceed to the question of constitutionality. Plaintiffs' argument, in effect, is that they do not presently have intentions of building and that consequently any assessment hereafter made, as contemplated, would be a severe financial burden upon them for a useless purpose so far as they are concerned. This, it is urged, deprives them of their property without due process of law in violation of both the New Jersey and the Federal Constitutions. Was the local action a palpable abuse of discretion, capricious, arbitrary or unreasonable? There is a total absence of proof of any abuse of discretion or bad faith. An ordinance cannot be said to be capricious, arbitrary or unreasonable merely because it might impose an inconvenient financial burden on an individual.
An ordinance is presumptively constitutional and will not be declared discriminatory unless it is manifestly unreasonable, State v. Wittenberg, 26 N.J. 576 (1958); and the one attacking it has the burden of overcoming the presumption of reasonableness. Oliva v. Garfield, 1 N.J. 184 (1948); Repp v. Shahodi, 132 N.J.L. 24 (Sup. Ct. 1944); Crow v. Westfield, 136 N.J.L. 363 (Sup. Ct. 1948); Collins v. Bd. of Adjustment of City of Margate, 3 N.J. Super. 553 (Law Div. 1949), affirmed 3 N.J. 200 (1949); Guill v. Hoboken, 21 N.J. 574 (1956).
No question of fundamental constitutional rights is advanced by the statement that plaintiffs do not presently need such sewer, and imposition of its cost, to the extent benefited, would be a deprivation of property without due process. The governing body determines the general need and the remedy is at the polls so long as it acts reasonably and without discrimination.
*336 Plaintiffs raise an issue which appears to be neither a substantial constitutional one nor even a proper ground of appeal from an assessment. The remedy for the objectionable feature of the ordinance is encompassed by R.S. 40:49-7, 8, 9, or by appeal from the assessment. R.S. 40:56-21. A court should not be asked to substitute its judgment for that of the governing body in matters properly committed to that body and reasonably discharged.
An additional thrust is directed to the finding of the State Board of Health under N.J.S.A. 40:1-16(g). Is such finding reviewable here? The defendant during the hearing here conceded that it is not res adjudicata. See Central Home Trust Co. v. Gough, 5 N.J. Super. 295, at pp. 298, 299 (App. Div. 1949); In re Masiello, 25 N.J. 590, at pp. 598, 599 (1958); Frizen v. Poppy, 17 N.J. Super. 390, at p. 394 (Ch. Div. 1952); Garrou v. Teaneck Tryon Co., 11 N.J. 294, at p. 306 (1953); Adler v. Dept. of Parks, Irvington, 20 N.J. Super. 240, at p. 245 (App. Div. 1952).
Does the statute contemplate a hearing in which plaintiffs were entitled to participate? Nowhere does the statute indicate such proceeding requires notice to plaintiffs. See Griggs v. Princeton Borough, 33 N.J. 207, at pp. 225, 226 (1960); Abbotts Dairies v. Armstrong, 14 N.J. 319, at pp. 331, 332 (1954); Wilson v. Long Branch, 27 N.J. 360, at pp. 383, 384, 385 (1958).
Had the municipality adopted this ordinance without the need for compliance with N.J.S.A. 40:1-16(g), the plaintiffs' remedy would be that provided by the statutes already referred to or by "in lieu" procedure to the extent allowable. The question of a public menace would not then have been an issue.
To the extent, however, that an agency makes a finding without any factual support, it would be intolerable if it were insulated against any challenge. That, however, is not the situation here.
*337 I conclude that a hearing in the sense of a trial was not contemplated. Government would become sterile if each individual had a right to participate in such a determination and be entitled to a day in court for offering proofs and cross-examination. Cf. Ryan v. Housing Authority of Newark, 125 N.J.L. 336 (Sup. Ct. 1940).
On the proofs adduced, I fail to see any merit to the challenge of the board's finding. Conceding that plaintiffs' lands are free of unsanitary conditions which are a menace in themselves, it does not follow that the health board erred or acted without any basis in making its finding.
Health hazards cannot be attacked on so confined or piecemeal a basis, nor on a lot-by-lot basis. Blighted parts of a community are attacked on an area, rather than structure-by-structure basis, and I see no distinction as a matter of law. Cf. Wilson v. Long Branch, 27 N.J. 360, at pp. 379, 380, 385 (1958).
Plaintiff takes too narrow a view. It is fallacious reasoning to say that each and every portion of the land involved must be immediately fraught with danger of health hazard and a menace. The governing body has the right, power and the duty to look to the future. It need not wait until the menace requires suppression but can take prophylactic measures to prevent. The State Board of Health's action rests on the same foundation.
That Woodbridge Township has in a relatively short time become the most populated municipality in Middlesex County is a matter of common knowledge, and the court takes judicial notice of the municipal problems brought in the wake of the "population explosion."
The governing body cannot be hamstrung, in its efforts to cope with general welfare, by inconveniences and temporary hardships to individuals; these must give way for the greater good.
That the ordinance was a proper exercise of municipal authority pursuant to N.J.S.A. 40:56-1 et seq. is so plain as to require no further comment.
The complaint is dismissed.