THE POINT PLEASANT ELECTRIC LIGHT AND POWER COMPANY

*v.*

THE BOROUGH OF BAYHEAD et al.

[Filed July 29th, 1901.]

1. Electric light companies organized under the General Corporation act of this state have authority to erect poles and to string and maintain wires in the public highways · upon first obtaining the consent of the owners of the soil.

2. The proviso of the act of 1896 (*P. L. of 1896 p. 322*) declaring that no poles shall be erected in any city or town without first obtaining a designation of the street in which the same may be placed, and the manner of placing the same, does not extend to boroughs.

3. The Borough act (*P. L. of 1897 p. 296*), empowering borough councils by ordinance to regulate the streets of the borough, to remove obstructions and nuisances therefrom, and to prescribe the manner in which corporations or individuals shall exercise any privilege granted to them in the use of the streets, confers a power which can only be exercised by the passing of an ordinance.

4. Until the borough council does pass an ordinance regulating the use of the borough streets or prescribing the manner in which electric light companies shall exercise their street privileges, an electric light company which has obtained the consent of the owners of the soil, may string its wires in the public streets of the borough.

5. The borough, and its officers, who claim the right to cut such wires because strung in the borough streets without the previous action of the borough council, will be restrained by preliminary injunction from such cutting. The injury to the complainant company is continuous and threatened to be repeated, and is not one for which adequate damages can be recovered at law.

On bill for injunction and affidavits, answer and affidavits.

· The complainant is a corporation of this state, incorporated under the General Corporation act, approved April 7th, 1875, and the supplements thereto. By its certificate it is stated, among other things, that its object was the construction and operation of a plant for supplying and distributing electricity for electric lights, &c. The principal part of its business was

Point Pleasant Electric Light Co. *v.* Bayhead.

transacted at the borough of Point Pleasant Beach, in Ocean county. It constructed its poles, wires and equipment within that borough, and desiring to extend its lighting system into the adjoining borough of Bayhead, with a view of supplying its inhabitants with electric lighting, it applied to the mayor and council of Bayhead, in May, 1901, to pass an ordinance designating streets in the borough upon which its poles might be placed, and presented a petition of property-owners and residents praying the passage of such ordinance. The bill states that the present counsel of the complainant company has advised that it was unnecessary to obtain such designation. The complainant company, in this situation, attempted to supply the Grenville Arms Hotel, situate in Bayhead, with electric lighting, and erected such poles as were necessary outside of the streets of that borough upon private property, by permission of the owners, and strung its wires on these poles and on fourteen other poles belonging to the Delaware and Atlantic Telephone Company, on Osborne and Lake avenues, in Bayhead, by the consent of that company. It thus connected its wires with the Grenville Arms Hotel. Where the wires cross the streets of Bayhead they have an elevation of about twenty-five feet, and the complainant claims they in no way interfere with travel over those streets, and it proffers itself willing to conform its occupation of the streets by its wires to such regulations as may be imposed by the municipal authorities of Bayhead. The complainant company's connection with the hotel, which had been fitted up at considerable expense for electric lighting, was completely made. On June 16th, 1901, the council of Bayhead instructed the officers of the borough to cut the complainant's lines of wires overhanging the streets of the borough. The bill states that, on that day, the officers cut the wires which hung over the streets, broke the supporting insulators and attempted to cut down the poles which had been erected on private property; and later in the day entered on private property, where complainant's wires and poles were set up, and cut the service there, broke the insulators and brackets and destroyed the connection with the hotel, with a threat to cut the wires again if the complainant restored them.

The bill makes defendants the borough of Bayhead and its officers who cut the wires. It prays

> "that they may be perpetually restrained from cutting down the poles placed by complainant on private property in Bayhead, or the wires connected with the said poles and with the poles of the Delaware and Atlantic Telephone Company; * * * from destroying the insulators or other electric appliances of the complainant, and from preventing the complainant from restoring the connection with its electric lighting system with the Grenville Arms Hotel, and from interfering with its system of electric lighting so long as it is conducted in the manner set forth in its bill."

An order to show cause why an injunction should not issue according to the prayer of the bill was, on the filing of the bill, allowed, with a restraining order, prohibiting defendants meanwhile from doing the acts of alleged injury set forth in the bill.

On the showing of cause, the defendants filed their joint and several answers, with supporting affidavits, setting forth, in detail, the complainant's application to the mayor and council for a designation of streets in which it might erect its poles and suspend its wires, &c.; with a copy of the ordinance suggested to be passed by the complainant company. The answer further states that, after full consideration, there was a refusal to designate streets for the purpose requested and the complainant was so notified. The defendants insist that the complainant had no franchise or authority to furnish light in the borough or to place its wires over or upon any of the streets; that on Sunday, the 16th day of June, 1901, between midnight and morning, the complainant company, without any permission from the mayor and council of the borough, strung its wires over the streets of the borough, on the poles erected in the streets by the Delaware and Atlantic Telephone Company, which company had no authority to allow the use of its poles for that purpose; that the ordinance authorizing them (the telephone company) to put up poles in the streets of the borough expressly declares that the telephone company may place and maintain wires thereon for the purpose of transmitting messages "by telegraph or telephone only." The answer further states that on June 22d, 1901, the employes of the complainant company again began work stringing wires on poles, and were resisted by the officers of the bor-

ough, who were arrested because of their resistance, and while they were under arrest the complainant company's workmen completed the connecting of its wires with the Grenville Arms Hotel and began supplying that hotel with electric light. The defendants aver that the placing of the wires as stated over and above the streets of the borough was, and is, without authority from the mayor and council of the borough and is without warrant of law. They expressly deny the right of the complainant company to place or construct wires on the poles within the borough without first obtaining from the borough permission there to carry on and conduct the business of the company, and assert that an ordinance granting such permission is a prerequisite to the rights of the complainant company to exercise in that borough any of the powers given by its incorporation. They further deny that the Delaware and Atlantic Telephone Company could, under any ordinance of the borough, grant to the complainant the right to erect wires on its poles without first obtaining from the mayor and council an ordinance therefor. The defendants aver that they gave no assurance to the complainant company or to the proprietor of the Grenville Arms Hotel that any privilege of extending its wires in the borough would be granted, and they say the complainant company and the proprietor of the hotel are alone responsible for any loss which may have been incurred. The defendants admit that, acting under the authority of the borough, after the complainant company had been requested not to erect its wires, and had defied the officers of the borough, they cut the wires leading across the streets to the Grenville Arms Hotel, and they insist that they had a lawful right so to do.

The defendants expressly aver that the complainant company is not conducting a general system of electric lighting in the borough of Bayhead, and is not supplying either light or power either to the municipality or to any person adjacent to that borough; that the wire cut by the defendants was no part of a general system connecting distant points, but was a single wire connecting one hotel, stopping there, and affecting that one private interest only, and not interfering with any public business.

*Mr. John B. Humphreys* and *Mr. Peter Backes,* for the complainant.

*Mr. David Harvey, Jr.,* and *Mr. Isaac W. Carmichael,* for the defendants.

GREY, V. C.

There is very little, if any, dispute between the affidavits annexed to the bill of complaint and those appended to the answer as to the facts in this case. The argument made was almost wholly upon questions of law.

The complainant company claims that, under the statute of April 21st, 1896 (*P. L. of 1896 p. 322*), it has received directly from the legislature full power to use the highways of the state for the purpose of erecting poles to sustain wires, &c., upon first obtaining the consent, in writing, of the owners of the soil. That statute enacts that

"any corporation organized * * * by virtue of the act entitled * * * 'An act concerning corporations,' for the purpose of constructing, maintaining and operating works for the supply and distribution of electricity for electric lights, * * * shall have full power to use the public * * * highways * * * in this state for the purposes of erecting posts or poles on the same to sustain the necessary wires and fixtures, upon first obtaining the consent in writing of the owners of the soil ; provided, however, no posts or poles shall be erected in any street of any incorporated city or town without first obtaining from the incorporated city or town a designation of the street in which the same may be placed and the manner of placing the same," &c.

In the case of *Suburban Electric Light Co.* v. *Inhabitants of East Orange, 14 Dick. Ch. Rep. 563,* a bill was filed seeking to enjoin the township of East Orange from cutting down the light company's wires attached to poles of a telephone company in a street of that township. The above statute was cited as the authority of the light company to string its wires on the telephone company's poles. Both in this court and in the court of appeals the case was dealt with as involving the right of the electric light company to string wires in the public streets. An injunction was allowed. An appeal was taken, and the court of appeals sustained the decree for injunction, upon the single ground that,

Point Pleasant Electric Light Co. *v.* Bayhead.

upon the true construction of the act of 1896, the power con-ferred by it upon electric light companies "was not limited by any requirement that permission should be first obtained from a township within which the power was exercised." The opinion declares that the legislature, when it prescribed that in "cities and towns no poles should be erected without first obtaining from the municipality a designation of streets, &c., and the manner of placing, intended to require the permission to be obtained only from cities and towns *eo nomine*," and concluded with this sum-mation of the whole case: "The result is that the respondent [the electric light company] was possessed of sufficient authority to string and maintain the wires in question in the public streets, and whether it originally acquired or afterwards retained the permission of the township authorities was immaterial."

The defendants (the borough of Bayhead and its officers) do not deny that the statute of 1896 vests in the complainant com-pany the power to erect poles to sustain wires in the public streets, nor does it claim that a borough is, within the proviso of that act, a city or town in which permission to erect poles shall first be obtained. Their contention is that the Borough act of 1897 authorizes the council of the borough to "regulate the use" of the streets and roads of the borough and to prescribe the manner in which corporations shall exercise any privilege granted to them in the use of any street. They insist that the pre-existing right of the complainant company to use the streets of the borough can be exercised only after the borough council has prescribed the manner in which the complainant shall exercise it.

There is no claim that the wires of the complainant company, as they cross the borough streets, are obstructive of passage in the street, nor that they are in any other way a nuisance. The defendants stand upon their assertion of a right to prevent the stringing of any wires across the borough streets until the bor-ough council shall have first prescribed the manner in which the complainant company should exercise such a privilege. The Bor-ough act of 1897, which is invoked to sustain this claim (*P. L. of 1897 p. 296 § 28*), under the heading "Powers of Council," declares:

"The council of said borough shall have power: 1. To pass, alter or repeal ordinances to take effect within the limits of the said borough for the following purpose : * * * to establish * * * the boundaries of the streets and roads in said borough and to regulate the use thereof; to prevent and remove all obstructions, encroachments, intrusion and nuisances in and upon any street; to prescribe the manner in which corporations or individuals shall exercise any privilege granted to them in the use of any street."

Whether the stringing of a single wire across a public highway, at such a height as not in any way to interfere with any use of the street, is the exercise of a street privilege (see *Brigantine* v. *Holland Trust Co., 35 Atl. Rep. 345*), need not be here determined. If it is not a street privilege, the defendant borough has no control over the matter. If it is a street privilege, then the defendant borough has, by the terms of the Borough act of 1897, a right to prescribe the manner in which it shall be exercised.

Assuming that the act done by the complainant company in stringing its wire across the street of Bayhead was the exercise of a street privilege, must the complainant company await the previous action of the borough council before exercising it?

The statute of 1896 operated as a direct grant of power to the complainant company to do the act in question. The statutory grant is so expressed that the privilege given may be completely used by the complainant company, without further definition as to the manner or locality of its exercise. The statute conclusively deals with the obligation of the companies to whom the powers are given to obtain from the local authorities, before using them, a designation of place and manner of use. In incorporated cities and towns previous designation of place and manner of using is expressly required. In other places, such as townships and boroughs, there is no such requirement. In the latter municipalities the powers (given in terms which make them capable of complete exercise by the receiving corporations) may be used without first obtaining such designation from the local authorities. The court of appeals seems to have finally settled this when it declared that, under the terms of the statute of 1896, an electric light company is "possessed of sufficient authority to string and maintain the wires in question in the public streets, and whether it originally

obtained or afterwards retained the permission of the town authorities is immaterial." *Suburban Electric Co.* v. *East Orange, 14 Dick. Ch. Rep. 563.*

The Borough act of 1897 does not require that the exercise of street privileges by corporations having such powers shall await the action of the borough authorities. Had the legislature intended this, it could readily have expressed it in the statutory grant of power in the act of 1896. The legislature then considered and dealt with the subject, prescribing certain classes of municipalities within which designations of place and manner for the use of the powers must first be obtained, and leaving them to be exercised in all other municipalities without such previous designation. A contrary purpose should not be ascribed to the legislature by mere construction of another statute, which may have its full expressed effect without such incongruous interpretation.

It must also be noted that the Borough act directs that the authority there given shall be exercised by ordinance. Here is an original statutory grant of power, coupled with the prescription of a mode in which it shall be exercised. In such cases the observance of the prescribed mode is necessary to the exercise of the power. The authority given to boroughs by the act of 1897 is not self-operating to prevent the use of street privileges until action be taken. The terms used show that they are regulative of privileges already given. Until regulative action be taken in the mode prescribed by the Borough act, any existing street privilege, capable of complete exercise, may be used by any party having the right to use it. In this case there is no pretence that the borough of Bayhead has, at any time, passed any ordinance touching the exercise of such street privileges. The borough is here, however, by answer and proofs, insisting that its officers may, by physical force, prevent the exercise of street privileges, without any ordinance on the subject.

In *American Mutual Telegraph Co.* v. *Town of Harrison, 4 Stew. Eq. 631,* the poles of a telegraph company were erected outside the lines of the street on private property. The wires overhung the street at a height of twenty-five feet, and were not an obstruction to the use of it. The town authorities threat-

ened to cut them down—first, because the statute under which
the defendant company was organized gave it the right to use
public highways for erecting poles, upon first obtaining consent
of owners of the soil and a designation of streets and manner of
placing the same, and no such designation had been obtained;
and secondly, because the statute declared that the use of the
streets by companies organized under it should be subject to
such regulations and restrictions as might be imposed by the
municipal authorities. Vice-Chancellor Van Fleet held the pro-
vision as to first obtaining designation from the town authorities
of streets and manner of placing poles to be inapplicable to the
case before him, because the complainant's poles were, in fact,
erected on private property, and not in the public highway; and
the second justification to be of no force to prevent the stringing
of wires in public streets, because the town authorities had never
adopted any regulations or restrictions as to the use of the streets.
He declared that when the municipality had, by appropriate
proceedings, prescribed regulations, the complainants would be
obliged to conform to them, but in the meantime they cannot
compel the complainants to desist from further construction of
their work; that the complainants had done nothing but what
they had an unquestionable legal right to do, and that the de-
fendants should be enjoined from cutting the wires or otherwise
interfering with them. In the case of *Inhabitants of Summit*
v. *New York and New Jersey Telegraph Co., 12 Dick. Ch. Rep.
126,* this case was declared to be controlling upon the point
whether, in the absence of a regulation by the municipality, a
telegraph company has the right to string wires across a street,
at a proper elevation, from poles placed outside the street.

The defendants contend that the case of *Benton* v. *Elizabeth,
32 Vr. 415 (Supreme Court),* must be accepted as controlling
the matter now under consideration, and to prescribe that the
admitted pre-existing right of the electric light company to the
use of the borough streets cannot be exercised until the borough
council shall first have designated the place and manner of use.
In that case an oil piping company was assumed to have the
power to lay pipes for the transmission of oil. The charter of
the city of Elizabeth gave its council power, by ordinance, to

prescribe the manner in which the corporation should exercise any privilege granted to them in using the city streets. The city council did pass such an ordinance. An owner adjoining the proposed pipe line took a *certiorari* removing the ordinance. In discussing the questions involved the learned judge who delivered the opinion suggested, *obiter,* that the right of a party having a privilege to use a street is imperfect until the council indicates in what manner it may be exercised; that the pre-existing right is one to be exercised only as the council permits. The learned judge does not, in terms, declare that a legislative grant of power, capable of complete exercise by the recipient of the power, which is subject to regulation by the designation of place and manner of using by local authorities, cannot be used until the latter shall first have designated. The learned judge probably referred to such legislative grants of power as, by the express terms of the statute, depend for their exercise upon the previous action of the local council. *Benton* v. *Elizabeth, 32 Vr. 694,* was taken to the court of errors and was there (in 1898) affirmed, upon the opinion delivered in the supreme court. If that case is to be considered as an authoritative declaration of a general principle that in any municipality having power to regulate the use of streets there can be no exercise of street privileges received by direct legislative grant until the local authorities have first designated the place and manner of their exercise, then that decision is certainly antagonized by that delivered by the court of appeals (in 1899) in *Suburban Electric Light Co.* v. *East Orange, ubi supra,* when, construing the very statute in question in this cause (the act of 1896), it declared that, under that act, electric light companies (outside of cities and towns) have sufficient authority to string wires in the streets, and that the permission of the town authorities is immaterial.

The case of *Meyers* v. *Hudson County Electric Co., 34 Vr. 573 (Court of Errors and Appeals),* is also cited as declaring that the designation of streets and manner of placing by the local authorities must first be made. That case is inapplicable to the cause *sub judice,* for the reason that the matter there decided was the validity of an ordinance of the city of Bayonne. The court declared that the permission of the city authorities was a

20

prerequisite to the right of the electric light company to enter the street. The statute of 1896, in terms, so declares as to *cities* and *towns*. The question in the present case is whether borough authorities, without such legislative declaration requiring their previous action, may, under a general power to regulate streets and to designate the manner of using street privileges, exclude the corporation having defined street privileges from using them until such designation is made.

The right of the complainant company to string its wires in the manner stated in its bill in the borough of Bayhead must be held to be established.

The defendants contend that the threatened injury is limited to the cutting of but a single wire, serving light to the Grenville Arms Hotel, and that this is not such an irreparable injury as to justify the issuing of an injunction. But this is not a fair statement of the controversy. The pleadings and proofs show that the complainant company had a right to string wires in the streets of the borough of Bayhead, and was proceeding to exercise it, when the individual defendants, in behalf of that borough, which has since adopted their actions as its own, denying the complainant's right, cut the complainant's wires in the streets of the borough and destroyed its appliances. The defendant borough asserts, by its answer, its right to do this, and it is entirely apparent that it will do it, unless restrained by this court. The defendant's contention is not limited to an assertion of its right and purpose to cut the Grenville Arms Hotel wire, but to cut any wires which the complainant may string in the streets of the borough of Bayhead. That is its claim in its answer; that is the argument of its counsel. For such threatened continuing and repeated injuries no adequate damages can be recovered at law.

An order for an injunction will be advised according to the views above expressed.