[Hamner v. Griffith's Administrator.]

## WESTERN DISTRICT, PITTSBURGH.

## Hamner *versus* Griffith's Administrator.

1. When a sheriff levies upon goods and refuses to sell, the plaintiff in the execution is entitled to recover from him the value of the goods levied upon, or the amount of the execution, whichever is least.

2. When the sheriff makes a levy and refuses to sell, the only remedy of the plaintiff in the execution is against the sheriff to the amount of the goods levied upon.

3. The sheriff is not answerable to a junior creditor, whose writ comes so late that the money could not be made.

4. For a misfeasance in office by a sheriff, each creditor can recover only what he has lost by it, and one who could have got nothing if the sheriff had done his duty, can demand nothing for the breach of it.

5. A judgment, sentence, or decree of a court of competent jurisdiction, is conclusive evidence of every fact on which it must necessarily have been founded.

6. A. had the senior, and B. the junior execution in the sheriff's hands, both of which were levied on personal property, which the sheriff refused to sell, and removed it to another county. Subsequently the real estate was sold. *Held*, that if A. had a right of action against the sheriff, for the proceeds of the personal property, it was a satisfaction *pro tanto* of his judgment, and that for that amount he was debarred from claiming out of the proceeds of the realty, as against other judgment-creditors.

7. When the sheriff has money in his hands—the proceeds of the sale of real estate—he has a right *pro interesse suo*, to appeal from the order of the court decreeing distribution.

ERROR to the judgment of the Court of Common Pleas of *Somerset county*, on the following stated case:

"The counsel agree upon the following facts in this case to be submitted to the court for judgment. If upon the facts the plaintiff is entitled to recover, then judgment to be entered for the plaintiff for $550, with interest from 1st December, 1849, with costs, otherwise judgment to be entered for the defendant, for costs: each party reserving the right to a writ of error.

"Judgments were entered in the Court of Common Pleas of Somerset county, Pennsylvania, against Huber and Myers, upon which *fi. fas.* were issued in the following order.

"*Deal, Burt & Milligen* v. *Huber & Myers*, No. 27, September Term, 1849, issued 11th May, 1849. By virtue of this execution, Samuel Griffith, then sheriff of said county, levied upon the personal property of said defendants. *Thomas M'Dowell* v. *Same*, 43 of September Term, 1849; *John Gebhart* v. *Same*, 44 of same term; *Charles Wingart* v. *Same*, 46 of same term; *Watt & Wilson* v. *Same*, 47 of same term, all issued 14th June, 1849. *Painter & Co.* v. *Same*, 49 of same term, issued 15th June, 1849. *John Gebhart* v. *Same*, 50 of same term; *Ewalt & Gebhart* v. *Same*, 51 of same term; *H. Childs & Co.* v. *Same*, 52 of same term, issued 16th June, 1849; *J. Gemmell & Co.* v. *Same*, 55 of

[Hamner *v.* Griffith's Administrator.]

same term, issued 19th June, 1849. *Solomon N. Hamner* v. *Same*, 56 of September Term, 1849, issued 20th June, 1849. Upon each of these executions, sheriff Griffith made the following endorsement : ' Personal property levied upon in this case subject to the levy on No. 27, September Term, 1849, see writ.'

" There was one team of mules, wagon, harness, and a ton of metal, property of defendants, at the furnace, sent to Johnstown, Cambria county, by the said sheriff, where it was levied on by the constable of Johnstown, on other executions against said firm, and sold, and never accounted for by sheriff Griffith, the value of which is filed at $625.

" The amount made by the sale of the personal property, and in the hands of the sheriff for distribution was $9121.37½, which sum satisfied and paid in full, all the claims of the creditors upon the executions already named, except the claim of Z. Gemmell & Co., upon which there was paid only $87.41, and the claim of Solomon N. Hamner, which was not reached at all, all of which appears by the auditor's report, made 28th September, 1849, and confirmed by the court the 1st day of October, then next ensuing.

" Afterwards, on the 16th October, 1849, Z. Gemmel & Co. issued an alias *fi. fa.*, and levied upon the real estate of Huber & Myers, and subsequently the same was sold,—the money brought into court, and then distributed to the creditors of said defendants, satisfying among others, the balance, after deducting the said sum of $87.41, of the said claim of Z. Gemmell & Co. in full.

" If the sum of $625, the value of the team of mules, &c., had been levied on and accounted for by sheriff Griffith, it would have been absorbed by the judgment of Z. Gemmell & Co.

" In the distribution of the fund arising from the sale of the real estate of said defendants, the judgment of Solomon N. Hamner was not reached ; nor would said judgment have been paid if the property sold by the constable at Johnstown, had been applied to the *fi. fa.*, in favor of Z. Gemmell & Co.

" The writs of *fi. fa.*, auditor's reports, and the records referred to, are made part of the case."

Upon which case stated, the court entered judgment for defendant for costs, which entry of judgment is the error here complained of.

*Gaither,* for plaintiff in error.

*Edie,* for defendant in error.

The opinion of the court was delivered April 5, 1855, by

BLACK, J.—The defendant's intestate was sheriff of Somerset county, and had in his hands an execution in favor of the plaintiff on which he levied, and might have sold personal property to

[Hamner v. Griffith's Administrator.]

the value of $625. But he caused the goods to be carried away into Cambria, where they could not afterwards be reached, and the money which he ought to have made out of them was never realized.

Supposing the present plaintiff to have been entitled to the proceeds of the goods in case they had been sold, the neglect or refusal to sell them, entitles him to recover from the sheriff the value of the goods or the amount of his execution, whichever is least. This indeed would be his exclusive remedy, for he could not make a new levy, or demand his debt out of the proceeds of other property, whether real or personal. But it happens in the present case that the sheriff had in his hands at the same time an earlier execution, which was levied on the same goods, and large enough to absorb their whole value. The sheriff is not answerable to a junior creditor whose writ is so late that his debt could not in any event have been made. For a misfeasance in his office, like that charged here, each creditor can recover only what he has lost by it, and one who would have got nothing if the sheriff had done his duty, can demand nothing for the breach of it.

This, however, is not the whole of the present case. Gemmell & Co. had the elder execution upon the goods. They also had an early lien on the land of the debtor which was afterwards sold. They did not pursue the sheriff for his misconduct in not selling the goods, but when the price of the land was brought into court, they demanded there debt out of that fund, and got it upon a regular decree of distribution. Of course this made an end of Gemmell's claim against the sheriff, and he escapes altogether if Hamner, the present plaintiff, cannot hold him.

The argument which denies the sheriff's liability in this suit, is founded on the fact that there were other judgments against the land between those of Gemmell and Hamner, the latter standing so far down on the list of liens, that he could not have been reached if the former had been out of the way. It is admitted that if Hamner's lien on the real estate had stood next to Gemmell's, Hamner would have been injured by the sheriff's neglect to secure the goods and pay the proceeds to Gemmell, so as to let Hamner in upon the other fund. But his claim there was hopeless anyhow. It is insisted therefore, that the sheriff has got rid of his responsibility by a piece of good luck to which he is fairly entitled. Hamner, it is said, was not injured by the neglect to sell the personal property, because Gemmell would have taken the proceeds, and he was not injured by the payment of Gemmell's debt out of the real estate, because other creditors would have taken the whole of that fund if Gemmell had been cut out. He had no available lien against land or goods, and it mattered nothing to him whether those who had legal rights to the money, divided it according to law or not.

[Hamner *v.* Griffith's Administrator.]

This reasoning is specious, and at one time it made some impression in the minds of us all. But it does not go to the root of the matter.

It is certainly true that the present plaintiff cannot succeed to Gemmell's rights against the sheriff, by any kind of substitution. The equitable principle of subrogation can have no place here. If he had no cause of action at first he has none now. The liability was created when the wrong was committed, and the right to sue on it will not shift about from one person to another. If the injury was against Gemmell, he alone was entitled to the remedy, and the subsequent satisfaction of his debt was an extinguishment of the right of action, not a transfer of it to Hamner. But the true foundation of the plaintiff's claim is this : that the record before us shows conclusively *as a matter of fact*, that Hamner himself, and not Gemmell, was the creditor to whom the money made out of the lost goods would have gone.

The case agreed on by the parties, states that the execution of Gemmell went first into the hands of the sheriff. But it does not necessarily follow from this, that he would have the best right to the money which ought to have been made. There are many ways in which he might have been postponed. If he was postponed, he had no right of action against the sheriff, and Hamner had. The whole case turns upon this fact, and it must have been decided when the proceeds of the real estate were distributed.

If Gemmell had a subsisting lien against the personal property in question, at the time when it should have been sold, he had a remedy against the sheriff, to which it was the duty of the court to remit him. A decree that he should be paid out of the land, could have been made only on the fact being proved, or admitted, that the sheriff was not liable to him for his debt.

A judgment, sentence or decree of a court of competent jurisdiction is conclusive evidence of every fact, on which it must necessarily have been founded. For instance, we have decided at this term in *Cobaugh's Appeal*, that an order for the sale of land by the Orphans' Court, to pay debts, is evidence that the debts are a lien. But cases need not be cited for so plain a principle. This decree of distribution shows that Gemmell could have had no right of action against the sheriff for neglecting to sell the goods, and consequently no lien upon those goods since; if he had, it must necessarily have defeated his claim upon the fund, out of which he was ordered to be paid.

The sheriff is estopped by that decree. He was a party to it, and had the same notice that other parties had. The decree was against him that he should pay. He was entitled to be heard before it was made, and if it affected his rights injuriously he might have appealed *pro interesse suo*. If he was not a party to it in the legal sense of the word, then the decree was an adjudication upon

[Dalrymple *v.* Mead.]

the money which he brought into court to be disposed of; a judgment *in rem*, a sentence determining the *status* of a thing, and as such it is binding and conclusive on all the world. The sheriff has used it against one set of creditors, to prove that Gemmell had a right to be paid out of the land, and he cannot now defeat another by asserting that he had an inconsistent right against the personalty. Even if he had paid Gemmell with proceeds of the real estate without a decree, he would have been equitably estopped from denying that the payment was legal and right. To establish the validity of Gemmell's claim upon one fund, whether by the decree of the court, or the act of the sheriff, is to prove that the other was free from any demand which he could make.

The judgment of the court of Common Pleas is reversed, and judgment is now here given in favor of the plaintiff, for the sum of $726, being the sum of $550, with interest, from December 1, 1849, with costs of suit.