THE STATE, EX REL. MAYOR, &c., OF WILBUR, v. THE TRENTON PASSENGER RAILWAY COMPANY, CONSOLIDATED.

1. The ordinance of a borough required a city railway company to lay its road within the municipality in a certain manner, and the company duly accepted such ordinance under its corporate seal, and afterwards refused to comply with its provisions. *Held,* that a peremptory *mandamus* would be issued to compel it to perform the duty thus assumed.

2. Upon the amalgamation of several city railways by virtue of the statute, the consolidated company thus formed acquires the rights and franchises of the respective companies, but such prerogatives are not enlarged or magnified by such transmission, but are still subject to their original limitations and applications.

---

On application for *mandamus.*

Argued at June Term, 1894, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and LIPPINCOTT.

For the relator, *Barton & Dawes.*

For the respondent, *James Buchanan.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.  This case stands before the court on the facts narrated in an alternative writ of *mandamus,* the object of the procedure being to compel the respondent, which is a street railway company, (1) to take up from its railway tracks on East State street, in the borough of Wilbur, in the county of Mercer, certain rails of a particular design, known as the "T" rail, and to lay down in their places others of a different design, and (2) to pave so much of the street as lies between the rails of the railway tracks and between the tracks and eighteen inches beyond, in a particular manner and with specified materials.  With respect to the "T" rail which is thus sought to be got rid of, it is alleged that "it is not a fit and suitable rail for street railways, and it impairs the use of the said street by the people with their horses, carts," &c.  As the writ has been generally demurred to, it, of course, follows that the unfitness of the rail thus described is admitted.

After the foregoing statement, the narration then proceeds to show that the mayor and council of the borough of Wilbur, in the year 1892, passed a certain ordinance entitled "An ordinance to authorize the Trenton Passenger Railway Company, Consolidated, to build, maintain and use a street railway in the borough of Wilbur," whereby it was, among other things, duly enacted and ordained "that the Trenton Passenger railway be and the same are hereby authorized and empowered to construct, maintain and use a single and double-track railroad, &c., on East State street, from the westerly boundary of the borough of Wilbur to the easterly boundary of the borough of Wilbur," &c.

This grant of power was conditioned by the requirement that the company should lay its rails on a level with the face of the street, and that they should be the standard, best and most approved form for city railroads, and that the respondent should pave, with certain specified materials, that part of the street so occupied by it, and likewise eighteen inches on each side of the track.

In this connection it is also finally averred that this ordinance was accepted, under its corporate seal, by the respondent.

The object of the writ before the court is to compel the respondent to comply with the ordinance thus accepted by it, and the non-performance complained of is of this complexion:

Part of the railway track in question was formerly, and before the incorporation of the borough of Wilbur, in the township of Hamilton, and while this was so a certain street railway had been organized by virtue of the general law of this state, and had applied to the township committee of the township of Hamilton for authority to lay its track in that district, and such application proving successful an ordinance was accordingly passed giving the authority necessary to construct, maintain and operate a street railway upon East State street, in the township just mentioned. By force of this authorization the Hamilton Township Street Railway Company proceeded to the construction of the track so sanctioned, and laid it with the "T" rails of which complaint is now made. Affairs remained in this condition, as appears from the pleading before us, until after the creation of the borough of Wilbur, and until the Hamilton Township Street Railway Company had merged and consolidated its corporate franchise and property with those of the Trenton Horse Railroad Company, the City Railway Company and with the Clinton Avenue and Broad Street Railway Company, under the style and name of the Trenton Passenger Railway Company, Consolidated, such amalgamated company being the respondent in this case.

It will be observed, from this brief sketch of the circumstances, that the complaint of the relator is that the respondent

still continues the use of the "T" rail in the construction of that part of its track in the borough of Wilbur that was originally laid out by the Hamilton Township Street Railway Company.

Can any reasonable ground be assigned for such retention?

In the first place, it is contended by the counsel of the respondent that this part of the track in question, thus objectionably constructed, is not embraced in the ordinance of the borough of Wilbur, the substance of which has already been stated. It is argued that this ordinance is prospective and cannot be construed to apply to that part of the track already in existence.

But such a construction is entirely inadmissible, for it would be plainly repugnant to the language and evident purpose of the ordinance itself. The borough law gives its assent to a right in the respondent to construct, maintain and use a street railway track from the eastern to the western boundary of the borough, and it is that entire track that it regulates and prescribes what kind of rails shall enter into its construction. No reason has been or can be assigned why this regulation should not be executed according to the exact linguistic sense of the terms thus employed. Any attempt to contract its force, so as to give it only a partial application to the structure in question, must prove fruitless, for it would seem that no plausible ground can be laid that could have induced the borough authorities, after providing so carefully and specifically for the proper construction of a part of the track, to leave the residue of it in such a condition as to occasion very considerable public inconvenience.

It is deemed that the ordinance indisputably calls for the removal of the "T" rail, and the substitution of the improved rail in its stead.

This being the situation, it is difficult to understand how it can be reasonably contended that the respondent can refuse to comply with its provisions. The ordinance, it will be remembered, requires the laying of the improved rail on the entire track within the limits of the borough, and that ordi-

nance was formally accepted by the respondent. How is it that the obligations thus assumed are to be disregarded?

The argument on this subject, contained in the brief of the counsel of the respondent, is plainly founded on a misapplication of a legal rule that no one denies. The principle referred to is that which is embodied in the decision of *Hudson Telephone Co.* v. *Jersey City*, 20 *Vroom* 303, and which is to the effect that, when a corporate body has been authorized, with the assent of the municipal authorities, to use the streets of a city for a public purpose, and such assent has been given prescribing the mode of such use, and the corporate company has constructed its works in accordance with such conditioned acceptance, the city council cannot arbitrarily revoke the authority thus given. But it is obvious, at a glance, that the reported case differs from the case now before the court in two important particulars. In the first place, the right to lay the "T" rail in question has neither the sanction of the legislature nor the assent of the local authorities. The general law under which the respondent was organized has no provision on the subject, and when the ordinance of the committee of the township of Hamilton conferred the authority in general terms to lay a track in that locality, such grant of power by necessary implication excluded all pretension of a license to construct the roadbed with this "T" rail, which, when present, is, according to the record before us, little short of a public nuisance. Such an assent as the one just stated was a permission to construct a road in a proper manner, and consequently the respondent shows in such a sanction not the slightest color of right for the erection or retention of the structure now the subject of complaint.

Nor is the second contention, in behalf of the respondent, in this respect more stable. I refer to the position that the charter of the Trenton Horse Railroad Company makes it "lawful for said company to lay such rails or form of street rails on their road as they may consider the most approved," and that by force of the statutory amalgamation which has taken place the respondent is empowered to construct the

whole or any part of its consolidated route with such rails as itself deems to be of the most approved pattern.    This application of a special provision in the charter of one of these conjoined companies to all of them, is sought to be justified by force of the third section of the act that authorizes these city railroads to consolidate, and which declares that " all and singular the rights, privileges and franchises of each of said corporations," &c., " shall be taken and deemed to be transferred to and vested in such new corporation," &c.

But it is deemed to be manifest that this statutory provision will not bear the construction thus sought to be put upon it, for its effect is very plainly to give to the newly-formed company all the rights of the several parts of which it has been composed in the state in which such rights existed at the time of consolidation.    Such rights are not extended or enlarged by the process of transmission to the consolidated company, the consequence being conspicuously that the privilege given to the Trenton Horse Railroad Company to lay such rails as it might deem the most approved, within the area of its operations, cannot be expanded into the prerogative of thus proceeding within the several districts occupied by the companies respectively with which it has become merged.

And in quitting this subject two additional comments are not deemed inappropriate, the first being that even on the assumption of the existence of the right of the consolidated body to maintain a railroad in the borough of Wilbur, fashioned with such rails as " it may consider the most approved," that such a power will most assuredly not justify the laying of the " T " rail in question, which, by its demurrer, the respondent admits to be totally unfit for use ; and secondly, this court can in strictness know nothing of the privilege claimed to exist in the charter of this Trenton Horse Railroad Company, as that corporation was organized by force of private legislation of which judicial cognizance cannot be taken.

In short, the conclusion is that no ground has been laid that should induce the court to refuse to grant the mandatory

writ here prayed for. The respondent, in solemn form, agreed to do that which the process if issued will compel it to do, and it is certainly most difficult to comprehend how it can reasonably complain of such compulsion.

Let the *mandamus* issue unless leave be given to plead anew.