THE STATE, CONSOLIDATED TRACTION COMPANY, PROSECUTOR, v. THE CITY OF ELIZABETH ET AL.

1. The legislature, when it authorizes the use of the public streets for street railway purposes, is presumed to intend that the grantee of the franchises should hold its privileges subject to such regulations as are reasonably necessary for the common use of the street for a street railway and for ordinary travel.

| 58 | 619 |
| 59 | 395 |
| 59 | 399 |
| 59 | 407 |
| 58 | 619 |
| 62 | 157 |
| 58 | 619 |
| 61 | 255 |
| 58 | 619 |
| 66 | 21 |
| 58 | 619 |
| 67 | 79 |
| 58 | 619 |
| 63 | 361 |
| 68 | 505 |

2. The consolidation of the property and franchises of different companies by their own act does not enlarge the franchises, powers or privileges of the original companies. The new company takes the rights and franchises it acquires by the consolidation, subject to the original conditions and limitations.

3. Where an ordinance is within the powers granted to the municipality in its charter, the presumption is that it is reasonable. The judicial power to declare it void can be exerted only when, from the inherent character of the ordinance or from evidence taken showing its operation, it is demonstrated to be unreasonable.

4. To justify the vacation by the court of an ordinance regulating a street railroad company's use of the street, which otherwise would be legal, on the ground that it impairs the company's franchises or restricts the operation of its railroad, the proof should amount to a demonstration that the enforcement of the ordinance will necessarily have that effect.

5. An ordinance prohibiting the placing of salt on any street railway track or other part of a street or streets within a city, except on the curves of railways leading from one street into another, is a reasonable regulation for the common use of the street for a street railway and for ordinary travel.

On *certiorari.*

This writ brings up for review an ordinance of the city of Elizabeth, entitled "An ordinance to prevent the use of salt, rock salt, saltpetre or salt of any kind or character on any street railway within the city of Elizabeth," which enacted " that hereafter no person or persons, corporation or corporations shall put, throw or place salt, rock salt, saltpetre or any other kind of salt, or cause the same to be put, thrown or placed on any street railway track or other part of the street or streets within the city of Elizabeth, under a penalty of ten dollars for each offence ; provided, that any street railway company may use salt, rock salt or saltpetre on all curves of their railways leading from one street or avenue into another street or avenue running at right angles therewith."

Argued at November Term, 1895, before Justices DEPUE, VAN SYCKEL and GUMMERE.

For the prosecutor, *Frank Bergen.*

Contra, *James C. Connolly.*

The opinion of the court was delivered by

DEPUE, J. The ordinance under review was passed in virtue of section 31, subdivision 7, and section 32 of the city charter. *Pamph. L.* 1863, *pp.* 118, 123. It is contended by the prosecutor that the ordinance is invalid for two reasons—*first*, that it is unreasonable; and *second*, that it is an invasion of the legal rights of the prosecutor in respect of the company's exercise of its franchises within city limits.

The power of the municipality, by ordinance, to make reasonable regulations controlling the operations of street railway companies within the city, is undoubted. The franchise granted to those companies, to use the streets of the city for railroad purposes, affords no immunity from any police control to which a citizen could be subjected. *Trenton Horse Railroad Co.* v. *Trenton*, 24 *Vroom* 132. The ordinance set aside in the North Hudson County Railway case was an ordinance requiring the company to pay an annual license fee for each of its cars, the amount of which fee was such as to show that the ordinance was intended for the purposes of revenue; and the city had not the requisite power to exercise the licensing power to provide revenue. The court distinctly affirmed the validity of ordinances of the character of the ordinance in question, if they were reasonable, and held that the legislature, when it authorized the use of the public streets for such purposes, is presumed to have intended that the grantee of the franchises should hold its privileges subject to such regulations as are reasonably necessary for the common use of the street for a street railway and for ordinary travel. *North Hudson County Railway* v. *Hoboken*, 12 *Vroom* 71. The subject of municipal regulation of street railroads is fully discussed in *Booth St. Railw. L.*, §§ 223–239.

The liability of this company to municipal regulation by the city of Elizabeth is also affirmed by the terms of the law under which it holds and exercises its franchises. The main branch of its street railway system was constructed by the Elizabeth and Newark Horse Railroad Company, a company incorporated by a special act passed March 25th, 1864. The

fifteenth section of that company's charter enacts "that the said company shall, within the limits of the city of Elizabeth, in all things be subject to the provisions of the charter and ordinances of said city now or hereafter to be in force." *Pamph. L.* 1864, *p.* 504. The rest of its tracks in the city were laid by the Union County Street Railway Company, which was incorporated under the General Street Railway act of 1886, the nineteenth section of which empowered the municipal authorities to establish such reasonable regulations, as to the mode of use of the tracks and removal of snow and ice therefrom, as the interest and convenience of the public may require. *Gen. Stat., p.* 3219, § 44. Subsequently, by consolidations and leases, the property and franchises of these two companies became vested in the Consolidated Traction Company, the prosecutor in this case. That consolidation did not enlarge the franchises, powers or privileges of the original companies in the city of Elizabeth, and the new company took the rights and franchises it acquired by the consolidation, subject to the original conditions and limitations. *Wilbur* v. *Trenton Railway Co.,* 28 *Vroom* 212.

The contention of the prosecutor is that the use of salt in removing ice from its tracks is not attended with any inconvenience, discomfort or injurious consequences to the public, and the ordinance therefore is an arbitrary and unreasonable interference with the company in the management of its property and the conduct of its business. Much evidence on both sides of this controversy, consisting of the testimony of experts taken under the rule, and pamphlets and official reports on the subject, has been laid before the court. Where an ordinance is within the powers granted to the municipality in its charter, the presumption is that it is reasonable, and the judicial power to declare it void can be exerted only when, from the inherent character of the ordinance, or from evidence taken showing its operation, it is demonstrated to be unreasonable. *Trenton Horse Railroad Co.* v. *Trenton,* 24 *Vroom* 132, 140; *Paxson* v. *Sweet,* 1 *Gr.* 196; *Booth St. Railw. L.,* §§ 224, 230. The ordinance was passed by the unanimous vote of

the city council and was signed by the mayor. The testimony, with respect to the injurious effects of the use of salt in removing snow and ice from railroad tracks, is conflicting, and is not of such force and effect in favor of the prosecutor's contention as would justify us in condemning the official action of the city authorities.

The second ground on which the ordinance is assailed is that it impairs the company's franchises to such a degree as to be unlawful. These companies possess franchises acquired under the authority of the state legislature. The argument was that the prosecutor, having complied in all respects with the conditions upon which its use of the streets became entirely lawful to the full extent of its grant of franchises, was, therefore, entitled to have such use of the streets as would enable the company to exercise its franchises therein as fully as authorized by the legislative grant, unimpaired by municipal interference. The power granted to municipal bodies to legislate by ordinance is undoubtedly a grant to a subordinate body, and its legislative acts, when counter to the acts of the state legislature, must therefore give way ; but these companies, nevertheless, hold their franchises subject to such municipal regulations as do not unreasonably or unnecessarily interfere with the exercise of the franchises conferred by the legislature. *Allen* v. *Jersey City,* 24 *Vroom* 522.

In considering this ground of objection, the *status* of these companies in their use of the streets must be borne in mind. A street railroad company uses as its roadbed public streets, provided and improved at public expense, and acquired and held for the benefit and advantage of the public at large. In this respect, such a company occupies a position different from that of a railroad company exercising its franchises and transacting its business upon a roadbed provided at its own cost and for its exclusive use, except at crossings over streets and highways. The legislature, in authorizing a street railway company to make use of the public streets, intended that the grantee of such privileges should be subject to municipal regulations of a greater scope than would be allowable in the case

of companies occupying and using their own roadbed. To justify the vacation by the court of an ordinance regulating a street railroad company's·use of the street, which otherwise would be legal, on the ground that it impaired the company's franchises or restricted the operation of its railroad, the proof should amount to a demonstration that the enforcement of the ordinance will necessarily have that effect. That the company cannot so successfully operate its road, under the restrictions imposed by the ordinance, or that conformity to the regulations prescribed by the ordinance will occasion inconvenience or involve expense, will not be sufficient to justify such judicial action. Within the limits here indicated, the subject must be left to the judgment and discretion of the municipal authorities. In the Allen case, the company whose rights were involved was a steam. railroad. company, operating its railroad exclusively under legislative authority, upon its own roadbed, and making no use of the streets except at the crossings of their tracks over them. The effect of the ordinance which the court held inoperative as against the company in making a crossing· over streets, if enforceable against the company or its workmen, would necessarily have been to make the franchises of the company exercisable only by the consent of the board of aldermen, and to subject its right to exercise its franchises under its charter to the will of the legislative department of the city government.

In *Union Railway Co.* v. *Cambridge,* 11 *Allen* 287, a city ordinance which absolutely forbade the removal of snow and ice from the tracks of a street railroad, was sustained. The ordinance in question was passed under a statute identical in language with the nineteenth section of the General Street Railway act of 1886, quoted above. The contention on behalf of the company in that case, as it has been on this argument, was that the company, having the franchise to lay down a railway in the streets and run cars upon it, had, as incident to such franchise, a right to do whatever was necessary to make the use available, and therefore the right to remove obstructions of snow and ice which might impede or wholly stop the run-

ning of its cars. The ordinance, nevertheless, was sustained, and upon this contention of the company the reasoning of the court was that the use of the street was granted to the company only in common with others; that the snow and ice, which it might be desirable or necessary for the company's purposes to remove, might be very important for the convenience of other travelers to retain, and that the preponderance of public convenience should govern ; that the power and duty of deciding which course was advisable were vested by law in the city authorities, and it was not to be supposed that their decision was made without good reason. And in *Dry Dock, &c., Co.* v. *Mayor of New York,* 47 *Hun* 221, an ordinance prohibiting the use of sand on a street railway was held to be valid, although it was alleged by the company that the pavement, by use, had become so worn and slippery that otherwise it could not run its cars with safety to its horses.

It is not necessary, under the proofs in this case, to affirm or deny a power in the city government over street railroads as extensive and far-reaching as was held in the opinion of the court in the Cambridge case. The evidence produced by the prosecutor, touching the necessity for the use of salt to remove snow and ice from its tracks, consisted of the testimony of its superintendent. He testified that, in places where the tracks are low and the pavement high, as in Elizabeth avenue, salt is needed to remove the snow ; that when the snow gets frozen on the rail, it cannot be got off with a snow plow and sweeper; that the only remedy is to use salt, and that the grades on which salt is required extend only a couple of hundred feet on either side of the Central railroad. He also testified that in the middle of the day the water from the tracks would run to the low places and freeze at night, and in the morning it would be impossible to run the cars unless salt is used on those low places, and that the removal of ice from the track by the use of salt was more necessary when the cars are propelled by electricity than with horse-cars.

The import of this testimony is that the situation in which the use of salt is required is limited, and it in nowise appears that the company could not provide for the diversion of water from this part of its tracks in some manner at a reasonable expense.

This testimony falls short of that measure of proof which would justify the vacation, by the court, of this ordinance.

The writ should be dismissed.