68  501
a69  451

MINOR H. IVINS ET AL., PROSECUTORS, v. THE INHABITANTS OF THE CITY OF TRENTON.

Submitted July 3, 1902—Decided November 10, 1902.

1. A city ordinance prohibiting the erection of any stationary or swinging sign, or any stationary awning shed, across the whole or any portion of the sidewalks, is not necessarily invalid, as being special in character and discriminating in its effects, because it is limited in its operation to a portion of the city only.

2. Where the city is populous and the territory thus selected covers the business centre and the most crowded thoroughfares of the city, these conditions may furnish reasonable ground for such discrimination, and render it consistent with the requirements of a valid ordinance.

3. It is necessary to the validity of such an ordinance, otherwise regular, that it should be reasonable. And where the ordinance is within the powers delegated in the charter, its reasonableness is presumed, and unless the contrary is clearly demonstrated, the court will not interfere.

.4. Such an ordinance is not invalid as unlawfully invading the rights of the abutting owner ; the public right in the street is paramount, and the abutter's right to proper uses of the street in front of his property are subject to reasonable municipal and police regulation.

5. Under the charter of the city of Trenton (*Pamph. L.* 1874, *p.* 343) an ordinance of the character indicated above was held, under the circumstances of the case, to be reasonable and valid.

On *certiorari* to review an ordinance.

Before Justices DIXON, HENDRICKSON and PITNEY.

For the prosecutors, *James Buchanan.*

For the defendants, *Charles E. Bird.*

The opinion of the court was delivered by

HENDRICKSON, J.   The prosecutors seek to set aside as invalid an ordinance of the city of Trenton, approved March 18th, 1902.   The ordinance ordains that the erection, &c., of any stationary or swinging sign, or any stationary awning, shed or other obstruction across the whole or any portion of any sidewalk, within that portion of the city of Trenton embraced within certain bounds defined in the ordinance, shall be deemed and is thereby declared to be a nuisance.

It contains provisions empowering and directing the police department to prevent such erections or other obstructions across the whole or any portion of any sidewalk within said bounds, and to remove any such erection or obstruction there existing in front of any building where the owner or occupant neglects or refuses to remove the same after ten days' notice, in writing.   A penalty of $20 is also added in case of such neglect or refusal after notice.

The prosecutors are the owners of a brick store building and lot, known as No. 120 North Broad street in said city, where for several years they have conducted the business of dealers in fruits, vegetables and produce.   They have an awning in front of their premises twenty-five feet eleven inches long, consisting of an iron frame and roof covered with boards and tin, fourteen feet in height next to the building and twelve feet in height at the curb and extending over the whole sidewalk.   This awning was constructed by the grantor of the prosecutors in 1886 and has been maintained there ever since.

It is contended that the ordinance is invalid in that it is not general, fair or impartial, but discriminates against indi-

viduals within a portion of the city, who are to suffer oppressive interference in the enjoyment of their property, while those who live in the remaining territory of the city are left entirely free from such interference.

In support of this contention the prosecutors cite *Dill. Mun. Corp. (4th ed.),* § 322, where the principle is laid down that "as it would be unreasonable and unjust to make, under the same circumstances, an act done by one person penal, and if done by another not so, ordinances which have this effect cannot be sustained. Special and unwarranted discrimination or oppressive interference in particular cases is not to be allowed."

This is without doubt a well-established doctrine, and if the ordinance in question is within the principle here delineated it must fail. But is it? The map presented to us shows that the district covered by the ordinance includes parts of four different wards of the city and is located at is business centre, and includes a large portion of the principal business streets.

The principle above alluded to as affecting municipal legislation is not universal in its application to all conditions, and will not necessarily render an ordinance discriminating because it affects a certain class, or is applicable only to a certain designated district or to a certain street. The general and special character of an ordinance must be determined by the facts of each case and not by any fixed rule. *Tied. Mun. Corp.* 152. This exception is recognized in the notes to section 322 of Dillon, in which the case of *Richmond Railroad Co.* v. *Richmond, 96 U. S. 521,* is cited with approval. The ordinance in that case forbade the running of railroad carriages, engines, &c., over part of a certain street. Upon the question of discrimination, Chief Justice Waite says: "All ordinances should be general in their operation, but all places within the same city do not necessarily require the same local regulation. * * * It is the special duty of the city authorities to make the necessary discrimination in this particular."

This view is sustained in the following cases: *Common-wealth* v. *Goodrich,* 13 *Allen* 546; *Barbier* v. *Connolly,* 113 *U. S.* 27; also in *St. Louis* v. *Weber,* 44 *Mo.* 547, where an ordinance prohibited the keeping of a meat-shop in the city of St. Louis within certain prescribed limits.

Applying this view to the case in hand, we think a city council of a populous and growing city might reasonably conclude that a measure so restrictive as this was necessary for public convenience in the crowded thoroughfares of the city, but was not necessary in the less crowded streets or in those where business places were less numerous. If we could discover from the facts before us that this ordinance was a mere act of caprice on the part of the council, and that in it there was an evident intent not to legislate in the interest of the general public, but to strike at the prosecutors, it would be our duty to condemn the ordinance. But since no such condition appears, we cannot interfere with the ordinance upon the ground just discussed. We are unable to see how our conclusion could be altered by looking at the ordinance of 1888 regulating the erection of signs and awnings. It excepted from its operation any veranda awnings then existing. The most that could be claimed under this ordinance was a license to maintain the awning then already erected. Such a license is revocable at any time.

The ordinance is further attacked on the ground that it is unreasonable.

In support of this averment, the point already discussed is renewed and it is further urged that the ordinance is an unjust and oppressive interference with the business of the prosecutors and their property rights. This position might appeal to us more strongly if the ordinance in question was not clearly within the powers delegated to the city by the legislature.

The charter of the city of Trenton (*Pamph. L.* 1874, *p.* 331), after granting to the common council power to make ordinances and by-laws, for the purposes, among others, of preventing and removing all encroachments, obstructions and encumbrances upon the streets of the city, defines a further

purpose for which such ordinances may be passed, as follows: "To prevent or regulate the erection or construction of any stoop, step, platform, bay window, cellar door, area, descent into a cellar or basement, sign or any post or erection, or any projection in, over or upon any street or avenue, and to remove the same where already erected, at the expense of the owner or occupant of the premises."

It will thus be seen that the ordinance in question is phrased almost in the very words of the charter, and that it is clearly within the power granted.

Under such circumstances the presumption is that the ordinance is reasonable, and unless it is clearly shown that the ordinance itself or the mode of its operation is unreasonable the court will not interfere. *Paxson* v. *Sweet,* 1 *Gr.* 196; *Trenton Horse Railroad Co.* v. *Trenton,* 24 *Vroom* 132; *Traction Co.* v. *Elizabeth,* 29 *Id.* 619.

There are no special facts brought before us bearing upon the question, except the nature of the business of the prosecutors and the fact stipulated that two hundred and forty-five different persons own overhead awnings and swinging signs within the territory defined. We do not regard the latter fact as very convincing upon the charge of unreasonableness. While we realize that such an ordinance may disturb somewhat and perhaps annoy the proprietors of business houses affected thereby, still it must be perceived that these erections may obstruct the streets in the congested centres of a populous city, and inconvenience large bodies of people who are entitled to the free and uninterrupted use of the streets for travel or passage. Regard must be had also to the fact that such erections, when largely multiplied, may mar the appearance of city streets and may, through decay or want of repair, become unsightly and perhaps unsafe to the pedestrian; and that they may obstruct the view and to a degree shut off light and air from persons residing upon the street in close proximity.

These are questions that may justly be considered by the city authorities in deciding upon the propriety of such an ordinance, and hence we conclude that the prosecutors have

failed to clearly demonstrate the charge that the ordinance is unreasonable.

With regard to the suggestion that the ordinance is inconsistent with the abutters' property interests, we think the proposition is clearly untenable. The title of the abutting owner may run to the centre of the street, as it generally does, but his rights must always be subservient to the public easement. He may make as of right all proper uses of the street, subject to the paramount right of the public user, and subject also to reasonable and proper municipal and police regulation. 2 *Dill. Mun. Corp.* 656a; *Weller* v. *McCormick,* 23 *Vroom* 470. In the latter case, Mr. Justice Dixon, in discussing the rights of the abutting owner, says: "He may use the highway in front of his premises, when not restricted by public enactment, for loading and unloading goods, for vaults and chutes, for awnings, for shade trees, &c., but only on condition that he does not unreasonably interfere with the safety of the highway for public travel."

No decision has been cited, and we know of none in this state, which asserts the doctrine that the exercise of such rights by the abutting owner are not subject to municipal control.

Other authorities supporting this view are *Pedrick* v. *Bailey,* 12 *Gray* 161; *Drake* v. *Lowell,* 13 *Metc.* 292; *Augusta* v. *Burum,* 93 *Ga.* 68; *Farrell* v. *New York,* 5 *N. Y. Sup.* 580, 672, and other cases cited in note 7 of 15 *Am. & Eng. Encycl. L.* (*2d ed.*) 499.

The case of *State* v. *Higgs* (*N. C.*), 48 *L. R., Ann.* 446, was cited in behalf of the prosecutors, where an ordinance forbidding the suspension of signs over sidewalks was held invalid, as not being within the chartered powers of the municipality. This decision was reached by a divided court, and is clearly distinguishable from the case we are considering.

The result is to affirm the ordinance, with costs.