ETHEL R. JONES *v.* BOARD OF ZONING APPEALS

[No. 12, January Term, 1938.]

*Decided February 9th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Joseph Sherbow* and *E. Allen Schilpp,* with whom were *Brown & Brune* on the brief, for the appellant.

*J. Francis Ireton, Assistant City Solicitor,* with whom was *R. E. Lee Marshall, City Solicitor,* on the brief, for the appellees.

JOHNSON, J., delivered the opinion of the Court.

This is an appeal from an order of the Baltimore City Court, whose decision affirmed that of the Board of

Zoning Appeals of Baltimore City, denying Ethel R. Jones, the appellant, a permit for the erection of a gasoline filling station on her property situated at the northwest corner of Frederick Road and Augusta Avenue.

The proposed location is admitted to be within 300 feet of a motion picture theater, and for this reason alone the Board of Zoning Appeals refused it, and based its action under Ordinance No. 1247, approved March 30th, 1931, paragraphs 34 and 34-A of which were amended by Ordinance No. 318, approved January 16th, 1937. Prior to the passage of the amending ordinance, by paragraph 34 of the original ordinance, the power, among others, was reserved to the Mayor and City Council of Baltimore to issue permits for filling stations "and/or tanks and pumps for the sale or retail of inflammable liquids in a use district where permitted by the use regulations. * * * " By subsection 2 of the paragraph first mentioned, certain uses prescribed in preceding paragraphs were further limited to the extent that no building or structure of any kind should thereafter be erected, altered, or used for the sale of gasoline or any other motor fuel on any lot or premises when any of the boundaries of the same were within 300 feet of "any public park, public square, or public playground or of any building or structure used as a church, orphanage, school, theatre or a motion picture theatre in the City of Baltimore. * * * "

Paragraph 34-A provided that application for a permit for any of the uses mentioned in the preceding paragraph should be made to the Buildings Engineer, whose duty it was forthwith to transmit the same, with drawings, plans, and specifications, to the Board of Zoning Appeals, who in turn should require the applicant to give notice in accordance with the provisions of the paragraph. The Board of Zoning Appeals was further required to submit such drawings, plans, specifications and any other data concerning the application, for investigation, to (a) the Board of Fire Commissioners, (b) the Commissioner of Health, (c) the Police Commis-

sioner and (d) the Chief Engineer of Baltimore City, and reports by said officials (1) as to whether the erection of the building would constitute a fire hazard, (2) a menace to health, (3) a traffic hazard, and (4) if such plans and specifications complied with the requirements of the building code of Baltimore City. The Buildings Engineer certified that the drawings and specifications complied with the general regulations of his office as to design, type, and construction; the Commissioner of Health found that the erection of the building at the proposed site would not be a menace to public health, while the Police Commissioner reported that its erection would not constitute a traffic hazard at that location, but the Board of Fire Commissioners disapproved construction of the building, because of the provisions of paragraph 34 of the ordinance that no such structure be erected within 300 feet of a motion picture theater, citing the presence of such a theater on the south side of Frederick Road near Augusta Avenue. In addition to these reports, at the hearing in the Baltimore City Court, the testimony of various witnesses was taken and appears in the record. It was testified that seven or eight years' previously, but subsequent to the erection of the motion picture theater, an ordinance was passed by the Mayor and City Council for the erection by the Standard Oil Company of a filling station at the southeast corner of Augusta Avenue and Frederick Road, directly opposite the Jones property, further that, if erected in accordance with the application, the filling station would be ultramodern and considered by fire insurance companies as a preferred risk; that accidents at filling stations were very low, and if erected as proposed the particular building would not present a traffic hazard, nor a fire hazard. Howard Travers, chief of the Baltimore City Fire Department, testified that his department would not approve the erection of stations next to each other, as they would create extra fire hazards, and, while the fact that the location was within 300 feet of the Irvington Motion Picture Theatre was the only reason the Fire Board

gave for its disapproval, he considered that the erection of the filling station would constitute a fire hazard. He recalled that there had been fires originating at filling stations; that one occurred on North Avenue, and while the station itself was not on fire they did have a hazardous fire running down the gutter, because of some infraction of regulations pertaining to the closing of gasoline faucets. Dr. W. D. Penniman, a chemical engineer, who was quite familiar with the making and handling of gasoline, stated that anything which burned rapidly had a very considerable hazard connected with it; that the hazard in handling gasoline during the period it was transported from one vessel to another or through leakage or even storage was present; that while it would not be more dangerous in this station than any other station in the city, the hazard of a fire at any filling station was inevitable. He explained this by saying that the explosive limits of gasoline vapor were about one and one-half to six; that the vapor which came from a tank when being filled was just that much thrown in the air. It would have a low explosive or inflammable limit, but, if the vapor was set on fire, the fire would burn to the mouth of the tank; that a common hazard was caused by leakage, the trucks being set on fire when filling the tanks; that, when mixed, gasoline vapor had ten times the explosive power of gunpowder, and such explosion would be caused by a lighted cigarette, the heat of a truck muffler, or the use of improper hose. He further stated; "If you assume perfect trucks, perfect people, perfect operation, the hazard has been reduced, but take all the things involved, the human element, and the different things that may occur in the truck, in the filling station itself, or in the machines that come there to be filled, we are more apt in getting the condition poor in the various kinds of machines that are brought to the station."

It is thus observed that the testimony of persons whose judgment is entitled to considerable weight is conflicting as to whether the erection of the filling station as pro-

posed would constitute a fire hazard and, while a majority of those who testified felt it would not constitute such a hazard, the fact remains that the subject is controversial. Upon this showing appellant insists that the order of the Baltimore City Court should be reversed, her contention being that, while paragraph 34 of the ordinance is generally valid, it is because of the facts in this case invalid as to her property. In support of that contention, we are referred to *Dillon on Municipal Corporations* (5th Ed.) sec. 591, and *McQuillin on Municipal Corporations* (1st Ed.) vol. 2, sec. 730, and authorities cited thereunder.

Among the authorities cited in support of those statements are *In re Berry*, 147 Cal. 523, 82 P. 44; *Ex parte Haskell*, 112 Cal. 412, 44 P. 725; *Myers v. City of Chicago*, 196 Ill. 591, 63 N. E. 1037; *Wells v. Town of Mt. Olivet*, 126 Ky. 131, 102 S. W. 1182; *Cape May, D. B. & S. P. Railroad Co. v. City of Cape May*, 59 N. J. L. 404, 36 A. 678; *Consolidated Traction Co. v. City of Elizabeth*, 58 N. J. L. 619, 34 A. 146; and *Mayor etc. of City of New York v. Railroad Co.*, 133 N. Y. 104, 30 N. E. 563. A consideration of those decisions, however, reveals that in none of them was the ordinance held unreasonable, the holding being to the general effect that, if the municipality had authority under its charter to pass such ordinances, a presumption existed in favor of their validity; that the judicial power to declare an ordinance void in such a case could be exercised only when from its inherent character, or from evidence as to its operation, its unreasonableness was demonstrated, and further, as in the Illinois case above cited, that the city authorities were the best judges of the necessity for the passage of such ordinances. Moreover, it is generally held that judicial authority to declare an ordinance unreasonable is a power to be cautiously exercised.

Many of those principles were recognized by this court in the case of *Lipsitz v. Parr*, 164 Md. 222, 164 A. 743, 746. In the course of that opinion, Judge Parke said: "The title to Ordinance No. 1247 indicates a subject-matter in

full conformity with the power in terms conferred by the General Assembly. The language of the ordinance is in close adaptation to that of the statute, and the provisions are of the specified and defined character authorized by the Legislature. So what the Legislature has distinctly declared may be done cannot be annulled by the courts because they may consider the thing, when so authoritatively done, to be unreasonable or against sound policy. *Dillon on Municipal Corporations* (5th Ed.) sec. 600; *Fire Department of New York v. Gilmour,* 149 N. Y. 453, 44 N. E. 177; *District of Columbia v. Waggaman,* 4 Mackey (15 D. C.) 328. The rule is different if the ordinance had been passed under the incidental authority of the municipality or under a grant of power of a general nature. So, unless the ordinance is void, in whole or in part, because repugnant to a constitutional inhibition, or the particular provision at bar is not within the grant of the power conferred upon the municipality by article 66B of the Code of Public General Laws, the ordinance will be sustained."

The authorities in this state and other jurisdictions were again exhaustively reviewed by Judge Urner in *Kramer v. Baltimore,* 166 Md. 324, 171 A. 70, 73. The contention there, as in the present case, was to the effect that, since Ordinance No. 243 of the Mayor and City Council of Baltimore prohibited the erection of a gasoline filling station within 300 feet of any church building in the city, its operation would be oppressive and result in great injury to appellant, whose property admittedly was within the prohibited distance of the church building; and while the validity of the ordinance in general might be conceded, nevertheless it was invalid in that particular case, because the erection of such a station would not constitute a nuisance nor create a fire or traffic hazard or be detrimental to the public health, morals, or convenience, and that the Mayor and City Council of Baltimore had failed to pass an ordinance waiving that requirement and permitting the erection of the filling station. Those contentions were rejected by

this court and in that opinion it was said: "It is conceded on behalf of the appellants that, according to the weight of authority, the objection to Ordinance No. 243, prohibiting the location of filling stations within three hundred feet of churches, orphanages, schools, and theaters, is not tenable. That concession is justified by the predominating effect of numerous decisions noted in 79 *A. L. R.* 918, under the caption of 'Public regulation or authorization of gas filling stations,' to which annotation the brief for the appellants refers. In *Clark v. Tower,* 104 Md. 175, 65 A. 3, the validity of statutory exclusion of the liquor business from defined areas was recognized. Enterprises having incidents which properly bring them within the purview of the police power may have a special tendency to create or increase in certain localities some of the hazards with which that power is concerned. It is readily conceivable that the establishment of filling stations in proximity to institutions where large numbers of persons assemble may materially intensify traffic and fire dangers which in other sections might be attributable to such stations only to a negligible degree. In our judgment, therefore, Ordinance No. 243 is a valid enactment."

At most, the appellant has succeeded only in showing the existence of facts tending to raise some question as to the wisdom of the enactment, but that the ordinance is valid on its face we entertain no doubt, and it is equally clear that it was enacted in pursuance of delegated authority from the Legislature. This being true, it cannot, under the facts disclosed by this record, be declared invalid or unreasonable in its application to appellant's property.

*Order affirmed, with costs.*