## Sun Oil Co. v. City of York

*Markowitz & Wogan,* for plaintiff.
*Frederick B. Gerber,* for defendant.

ANDERSON, J., April 13, 1940.—This is a petition for a declaratory judgment under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, and amendments. It involves the validity and constitutionality of a municipal ordinance of the City of York, Pa. (a third class city) and, therefore, presents a proper question for judicial determination under the Uniform Declaratory Judgments Act. The facts are not in dispute.

On or about June 2, 1939, Harry Weinstock, owner of a certain lot of ground located on the southeast corner of East Market Street and South Queen Street, leased a portion thereof fronting on South Queen Street to plaintiff, whose business is the refining and selling of oil and gasoline. On or about the same date an application for a special permit to erect a gasoline filling station thereon was presented on the prescribed form to the Council of the City of York. Thereafter, on June 16, 1939, at an open meeting of said city council, the application was rejected by city council and the mayor on the stated grounds that the granting of such special permit would be in violation of a certain ordinance of the city adopted on February 17, 1933, and the amendments thereto, relating to the required distance of gasoline stations from certain public buildings and on the further ground that the erection and operation of the proposed gasoline station would create a traffic hazard.

The pertinent parts of said ordinance, as amended, are as follows:

"An ordinance, regulating the location and construction of gasoline filling stations and the installation thereon of pumps, tanks and other containers and devices for the storage or sale of gasoline and other motor fuels, oils or similar products; and providing remedies and penalties for the violation thereof.

"Section 1. Be it ordained by the Council of the City of York, Pa., and it is hereby ordained by the authority of the same, that it shall be unlawful for any person, firm or corporation to build, erect, construct, reconstruct, install, extend or enlarge any gasoline filling station or pumps, tanks or containers thereon for the storage or sale of gasoline or other motor fuels, oils or similar products, without a special permit therefor, duly granted by the Council of the City of York, which special permit shall be in addition to the regular permit required by the ordinances of the City of York relating to buildings.

"Section 2. That application for such special permit shall be in writing and on such form as may be prescribed or approved by the city engineer with the approval of council, and signed by the owner of the premises. It shall be accompanied by a plan showing the location of the property, and shall show the points of installation of the pumps, tanks and other devices, including the building or buildings and the points of proposed entrance and exit to the property. All applications shall be accompanied by a special fee of twenty-five dollars ($25). As to gasoline filling stations heretofore erected, established or maintained, no special fee shall be required for any reconstruction, extension or enlargement thereof or the installation of additional pumps, tanks or containers therein, provided such reconstructions, extension or enlargement or installation of pumps, tanks or containers does not go beyond the property lines thereof as now fixed. In addition the applicant shall furnish such other and further information as the city engineer may require.

"Section 3 (as amended May 19, 1933). No such permit shall be granted for any such station or installation if any portion of the plot so to be used is within two hundred and fifty feet of any public park, or playground, or any church, school or hospital, or any other public building, or, if the location be within a congested business district or a strictly residential district, or, where by reason of traffic conditions, fire or explosive hazards, the operation of such station would unreasonably interfere with public safety. Distances shall be measured along or on the nearest public highways, excluding alleys unless such station or installation fronts on an alley. In a case involving a church, school, hospital or other public building, the measurement shall start at the nearest part of such building, but if such part be back from the highway the measurements shall start at a point at the highway which is opposite such part.

"Section 5. The owner or owners of any lands or buildings, or any part thereof, or the lessees, occupiers or oper-

ators of any such premises upon which any violation of this ordinance may be placed, or any person violating any of the provisions of this ordinance, or failing to comply therewith, shall upon conviction thereof before the mayor or any alderman of the City of York severally for each and every such violation or noncompliance therewith, be sentenced to pay a fine of not more than one hundred dollars ($100) and costs of suit, and in default of the payment thereof shall be committed to the jail of York County for a period not exceeding thirty days. Each and every day upon which any such person or persons, firm or corporation continues to violate the provisions of this ordinance shall constitute a separate offense."

Plaintiff contends that the ordinance is invalid and unconstitutional because it is arbitrary, discriminatory, confiscatory, unreasonable and vague, indefinite and ambiguous.

The site of the proposed gasoline station was found by the city authorities to be within 250 feet of the Martin Memorial Library, a building admittedly dedicated to the public use, and is also located on South Queen Street, a recognized thoroughfare of the city traversed by considerable vehicular traffic. Plaintiff, at the argument and in its submitted brief, admits that under The Third Class City Law of June 23, 1931, P. L. 932, the City of York has authority to enact ordinances dealing with the subject matter of the ordinance in question.

Plaintiff, however, contends that the said ordinance violates the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States and also article I, sec. 1, of the Constitution of the Commonwealth of Pennsylvania in that it is arbitrary, confiscatory, discriminatory, unreasonable and vague, indefinite and ambiguous.

The question of the constitutionality and validity of similar ordinances has been before the courts many times in other jurisdictions and has also been judicially determined in the State of Pennsylvania.

In one of the earlier cases decided by the Appellate Court of Illinois in 1925, an ordinance of the City of Chicago, which prohibited a filling station within 200 feet of property used for a church, school, theatre, or hospital, was upheld. This ordinance also specified the method by which the distance should be measured, forbidding the license or permit for "any lot or plot of ground where any of the boundaries of any such lot or plot of ground are within 200 feet of the nearest boundary of any lot or plot *used* for a school, hospital, church or theatre": People ex rel. v. McDonnell, etc., 238 Ill. App. 224.

The Supreme Court of North Carolina, in State v. Moye, 200 N. C. 11, 156 S. E. 130 (1930), upheld an ordinance which prohibited a gasoline station within 150 feet of a particular school, as applied to a station in existence within the prescribed area when the ordinance was passed, stating in the opinion that although a gas station is not a nuisance per se, yet it may become so by its location. In upholding an ordinance of the City of Murfreesboro, which prohibited filling stations on certain streets, the Supreme Court of Tennessee held that the ordinance was necessary for the public health and the protection of the public peace, health, and safety. Even though recognizing that a municipality cannot be authorized to enact ordinances which conflict with either State or National Constitution, State statutes, or general principles of common law, the regulation and prevention of traffic congestion is a matter affecting the safety and welfare of the city and hence within the legislative power of a municipality to regulate by ordinance: McKelley v. City of Murfreesboro, 162 Tenn. 304, 36 S. W. (2d) 99 (1931).

In the case of Interstate Oil Co. v. City of Orange et al., 11 N. J. Misc. 89, 165 Atl. 99 (1933), the Supreme Court of New Jersey upheld an ordinance of the City of Orange forbidding a gasoline station within 300 feet of various buildings, including a public school, stating:

"A gasoline station is not merely a fire risk, and within the police power in that regard . . . but it is judicially recognized as a danger to pedestrians entitled to use the sidewalks, when so arranged . . . as to require cars to cross the sidewalk when entering and leaving."

The court differentiated between such an ordinance and a zoning ordinance and stated that the police power to enact this type of ordinance exists as a matter of common law. A similar decision was rendered in Higgs v. City of Martin et al., 164 Tenn. 465, 51 S. W. (2d) 237 (1932), in which it was contended that other stations were located in the prohibited area and that the ordinance was therefore arbitrary, discriminatory, etc., quoting Spencer-Sturla Co. v. City of Memphis, 155 Tenn. 70, 290 S. W. 608, and State ex rel. v. Garner, etc., 4 N. J. Misc. 234, 132 Atl. 339. More recently the Court of Appeals of Maryland, in Jones v. Board of Zoning Appeals, 173 Md. 669, 197 Atl. 319 (1938), held valid an ordinance of the City of Baltimore prohibiting gasoline filling stations within 300 feet of churches, orphanages, schools, theatres, and certain other buildings, stating inter alia (pp. 673, 675) :

"Moreover, it is generally held that judicial authority to declare an ordinance unreasonable is a power to be cautiously exercised. . . . 'Enterprises having incidents which properly bring them within the purview of the police power may have a special tendency to create or increase in certain localities some of the hazards with which that power is concerned. It is readily conceivable that the establishment of filling stations in proximity to institutions where large numbers of persons assemble may materially intensify traffic and fire dangers which in other sections might be attributable to such stations only to a negligible degree' . . . that the ordinance is valid on its face we entertain no doubt, and it is equally clear that it was enacted in pursuance of delegated authority from the Legislature."

In an earlier decision, Kramer et al. v. Mayor and City Council et al., 166 Md. 324, 171 Atl. 70 (1934), the same ordinance was upheld by the Court of Appeals as not being unreasonable, arbitrary, discriminatory, without due process, or unconstitutional though other such stations had been authorized under substantially similar conditions, in view of a number of stations already in the same locality. In one of the latest decisions on this subject the Supreme Court of Florida, in State ex rel. v. Peace, etc., 139 Fla. 394, 190 So. 607, decided July 21, 1939, held that an ordinance was valid providing in part as follows:

" 'No gasoline and oil filling station and no service station shall be erected or located within 350 yards of any church, hospital, school or other such institution, where large numbers of pedestrians congregate, or within 750 feet of the location of another gasoline and oil filling station or service station.' "

The court reasoned that where an ordinance is enacted in the interest of the public and is designed to correct an evil or evils that are affecting or may affect public welfare, the manner in which such purposes are accomplished is one in which legislative discretion has very broad range, and courts should not attempt to substitute their judgment for that of the legislative body created for that purpose. The Berks County court in our own State, in Huetsch v. Grove, 23 Berks 154, upheld an ordinance of the City of Reading similar to the ordinance of the City of York, as being within the police power delegated to third class cities, even though it did not purport to apply to gas stations already established. The Reading ordinance provided that:

" 'No permit shall be granted for the construction, reconstruction or enlargement of any filling station or the installation of a gasoline tank or tanks, container or containers for the storage and sale of gasoline and other inflammable motor fuels, when said filling station or tanks, or any part thereof, are within fifty feet of any dwelling house or three hundred feet of any school, church, theatre,

playground, park or other place of public assembly, or where, by reason of traffic conditions, fire or explosive hazard, said filling station or storage tanks or containers would imperil public safety.' "

A perusal of the cases on this question indicates very clearly that it is primarily for the legislative body clothed with the police power to decide when and under what circumstances such regulations as set forth in the ordinance in question are necessary and essential for the safety and welfare of its citizens; and its determination in this regard, in view of its better knowledge of all the circumstances and of the presumption that it is acting with due regard for the rights of all parties, will not be disturbed by the courts unless it can be plainly seen that the ordinance has no relation to the purpose stated but is clearly an invasion of personal and property rights under the guise of police protection. The regulation and prevention of traffic congestion as well as regulation of the storage and sale of inflammable or explosive substances are matters affecting the safety and welfare of the city and hence within the legislative power of a municipality to regulate by ordinance. So long as the regulation is not shown to be clearly unreasonable, discriminatory and arbitrary, and so long as it operates uniformly on all persons similarly situated, the requirements and limitations thereof having been selected in the exercise of that reasonable discretion necessarily accorded the lawmaking body, it cannot be judicially declared that there is a deprivation of property without due process of law, or a denial of the equal protection of the law within the meaning of the constitutional provisions on the subject.

"The presumption is that it is reasonable and the burden of proving it otherwise is on the prosecutor": Neumann v. City of Hoboken et al., 82 N. J. L. 275, 278, 82 Atl. 511.

The court is not convinced of the unreasonableness of the ordinance in question nor that its provisions are vague or ambiguous.

By The Third Class City Law, supra, section 2403, subsecs. 11 and 54, which are as follows:

"11. . . . To regulate or prohibit the manufacture, sale, storage, or transportation of inflammable or explosive substances within the city, and to prescribe limits within which no dangerous, obnoxious, or offensive business shall be carried on."

"54. . . . In addition to the powers and authority vested in each city by the provisions of this act, to make and adopt all such ordinances, by-laws, rules and regulations, not inconsistent with or restrained by the Constitution and laws of this Commonwealth, as may be expedient or necessary for the proper management, care and control of the city and its finances, and the maintenance of the peace, good government, safety and welfare of the city, and its trade, commerce and manufactures; and also all such ordinances, by-laws, rules and regulations as may be necessary in and to the exercise of the powers and authority of local self-government in all municipal affairs; and the said ordinances, by-laws, rules and regulations to alter, modify, and repeal at pleasure; and to enforce all ordinances inflicting penalties upon inhabitants or other persons for violations thereof . . .", the City of York had the power to pass the ordinance in question, which the court finds is valid and constitutional.

And now, to wit, April 13, 1940, it is hereby ordered, adjudged, and decreed:

1. That an ordinance of the Council of the City of York, Pa., as amended, regulating the location and construction of gasoline filling stations and the installation thereon of pumps, tanks, and other containers and devices for the storage or sale of gasoline and other motor fuels, oils, or similar products; and providing remedies and penalties for the violation thereof, known as bill no. 4, introduced February 10, 1933, and adopted finally February 17, 1933, is valid and constitutional.

2. That the costs of the proceeding be paid by plaintiff, Sun Oil Company.